## George W. Lyon and Aaron Lyon v. Merchants National Bank.

1. EQUITY PRACTICE—*Where a Sworn Answer is Required.*—Where a sworn answer is required, and filed, denying the material allegations of the bill, it is evidence for the defendant, and the complainant can have no decree until the allegations of such answer are overcome by the evidence of two witnesses, or its equivalent.

Creditor's Bill.—Trial in the Circuit Court of Peoria County; the Hon. THOMAS. M. SHAW, Judge, presiding. Decree for complainant. Appeal by defendants. Heard in this court at the December term, 1898. Reversed and remanded with directions. Opinion filed May 19, 1899.

Foster & Carlock, attorneys for appellants.

Jack & Tichenor, attorneys for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

On October 21, 1891, the Merchants National Bank of Peoria obtained a judgment against George W. Lyon in the Circuit Court of Peoria County, for $3,438.65 and costs upon three notes, dated December 23, 1889. Said notes were given by George W. Lyon as renewals of prior notes of J. S. Ely & Co., of which firm George W. Lyon became a member near 'the close of its business career. From the proofs, at least $2,000, and perhaps all of said debt, was incurred by Ely & Co. before George W. Lyon went into the firm, but by later notes he became personally bound to pay the debt. Execution was issued upon said judgment and returned *nulla bona*. On April 22, 1892, the bank began this suit by filing a creditor's bill for discovery and relief against George W. Lyon, Aaron Lyon, Weston Arnold and Theodore Miller. The bill charged that in 1889 George W. Lyon was the owner of very many lots and undivided interests in lots and tracts of land in and about Peoria, described at length in the bill. For brevity we may say he owned either the whole of or some interest in the several pieces of real estate described as follows in the record, viz.: First, Jefferson Park Subdivision; second, Peoria Fair Subdivision; third, Highland Park Addition; fourth, Lincoln Place Subdivision; fifth, Selby Park Subdivision; sixth, the Washington street property; and, seventh, the homestead.

The bill alleged that in November, 1889, George W. Lyon, being largely indebted to complainant and others, in order to defeat his creditors, executed a number of deeds, by which he transferred all the above real estate, some of it to his father, Aaron Lyon, and the rest to his brother-in-law, Weston Arnold; and that said deeds were fraudulent; were for the purpose of hindering and delaying creditors; were

without consideration; and that the property was still held
in trust for George W. Lyon, etc.   The bill propounded to
each defendant many specific interrogatories, called for an
answer under oath, and asked a decree setting aside said
deeds and subjecting the premises to the payment of com-
plainant's execution.   Each defendant filed a sworn answer,
specifically answering the interrogatories, giving detailed
statements of the deeds and the considerations therefor, and
wholly denying the allegations of fraud, and denying that
George W. Lyon had any further interest in the lands con-
veyed to Aaron Lyon, and that they were held in trust for
him.   Complainant filed replications, and the cause was
referred to a master to take and report the proofs with his
conclusions.   Evidence was taken before the master in 1893
and in 1896, and in June, 1897, the master made a report
holding all the conveyances fraudulent.   Objections to the
report were filed before the master, which he overruled.
He then filed his report, and defendants filed exceptions
which were heard before the court.   The pleadings showed,
as did the proofs and the master's report, that the Jeffer-
son Park, Peoria Fair and Highland Park properties, num-
ered by us 1, 2 and 3, were conveyed by George W. Lyon
to Arnold, and the other properties to Aaron Lyon.   The
answer of Arnold claimed, and the proofs showed that the
conveyances to him were to secure the payment, first, of
certain notes owing by George W. Lyon to the German
American National Bank, of which Arnold was cashier; and
second, of a certain indebtedness to J. B. Greenhut.   It
may be these deeds to Arnold, being absolute on their face,
were fraudulent as to creditors, under Beidler v. Crane, 135
Ill. 92; but the court below by its decree found there was
no actual fraud in them; that the indebtedness they secured
had not been fully paid; that there was no equity in the
bill as to said conveyances to Arnold; sustained the excep-
tions to that part of the master's report, and dismissed the
bill as to said conveyances; and in this court complainant
has assigned no cross-errors.   The conveyances to Arnold,
therefore, stand unassailed here.   The court also found that

the Washington street property, numbered 6 above, had been sold by Aaron Lyon to A. V. Thomas before this suit was begun, and that the latter was a *bona fide* purchaser, and the court decreed that complainant had no equity as against that property. But the court found the conveyances from George W. Lyon to Aaron Lyon, of Lincoln Place, Selby Park and the homestead properties fraudulent as to the creditors of George W. Lyon, overruled the exceptions to the master's report as to them, and subjected said property to the lien of complainant's judgment and to sale under execution for the satisfaction thereof, as if the legal title were in George W. Lyon. This appeal seeks a reversal of that part of the decree.

The proofs show Aaron Lyon was a man of some wealth; that his son George was engaged in various speculations and business enterprises; that Aaron loaned George many sums of money for use in his business and in his speculations, for which he held George's notes, and some sums for which he held no notes; that he also signed many notes as security for George at banks and elsewhere; that in November, 1889, they figured up the amounts George owed his father and the notes upon which Aaron was security for George and which George could not pay, and found the sum approximated $22,000, besides a judgment in favor of one Pierce against George for $2,153, which was a lien upon the homestead, and a mortgage thereon for $2,380; that George's interests in the real estate here involved were worth about $12,000; that they then agreed George should convey said real estate to his father and the latter should accept it in full satisfaction of all George then owed him and in satisfaction of the notes upon which Aaron was security for George, which Aaron should pay, and in satisfaction of said Pierce judgment, which Aaron should pay, and subject to mortgages which Aaron was to pay; that George made and Aaron accepted these deeds as absolute conveyances; that Aaron surrendered to his son the notes he held against him and has paid many of the other claims, and stands ready and able to pay the rest in due time. George, though

insolvent, had a right to pay his father in this manner. The sworn answers (which complainant had to overcome) and the proofs we have stated made a clear case that Aaron was lawfully entitled to own and hold the property conveyed to him by his son unless the case so made is overborne by other facts in evidence.

Complainant made Aaron Lyon and Weston Arnold its own witnesses. George W. Lyon testified for the defense. There were other witnesses on each side, but none whose evidence standing alone has any special tendency to support the decree. As we view it, the decree must stand or fall by the sworn answers and the testimony of the three witnesses just named. The family relation existed and subjects the dealings between the parties to suspicion. Certain notes given by George to his father, the existence and payment of which by these deeds is sworn to by Aaron and George, and which George and his attorney, W. S. Kellogg, testify were before the attorney when he drew the answers, and whose dates and amounts were stated in the answers, were not produced at the trial. George swore they were canceled when the deeds were made; that he had them till he gave them to his attorney to use in preparing the answers, and after the answers were sworn to took them home and they were afterward lost and could not be found after diligent search; and he gave reasons for believing they had fallen on the floor and that the housekeeper had thrown them upon the ash heap, where some other old papers were recovered, but not these notes. The inability to produce these notes is relied upon as a suspicious circumstance. Aaron Lyon was eighty-four years old when his evidence was taken. His wife had died in 1888, and thereafter he had failed in memory and in ability to do business alone. For sixteen years George, who was unmarried, had lived with him, and had transacted much of his father's business, loaning money for him, examining abstracts, drawing mortgages, etc., in which business Aaron was also assisted by his son-in-law Arnold. George charged his father nothing for helping him to do business either before or after these deeds

were given. He paid his father no board, and before the deeds were made he charged his father neither board nor rent. After the deeds were made he helped to sell some of the lots for his father just as he had helped his father do business before. The title to some of these lots had stood in a trustee who did not know of the transfer from George to Aaron till it came time to make deeds to effect a partition, when he was told to deed to Aaron. For years before these deeds George had been in the habit of borrowing money freely from his father without giving a note at the time, and after several such loans were made they would figure up the amount of the debt and he would give a note for it. There were no book accounts of these temporary loans. Certain liens Aaron agreed to pay he did not pay directly, but caused the property to be sold at foreclosure and bought it in, in satisfaction of the liens. Part of the debts which the parties testified were considerations for these deeds, were debts to the German American National Bank, on which Aaron was security for George, and these debts were also secured by the deeds to Weston Arnold, which the court below sustained, and they were paid out of the proceeds of the property so deeded to Arnold. In one place George testified the debts he owed his father, and those which his father assumed, amounted to about $22,000 besides the Pierce judgment and the mortgage on the homestead, while the property deeded to his father was worth about $12,000 above the mortgages resting upon it. At another time he testified that there was about enough to make his father whole. We conclude that the meaning of the witness was that after deducting from his father's liabilities on his account what was secured by and paid under the deeds to Weston Arnold, there was about enough value in what he deeded to his father to make the latter whole. Aaron Lyon had become feeble in health and his memory had apparently failed, and he was unable upon the witness stand to state the full details of the considerations for which the deeds to him were made, though he gave the outlines of the transaction, and the details were proved by

George, and part of them by Arnold. George and Arnold, under protracted and searching examination and cross-examination, remembered details of the dealings which they had not stated in their answers to the bill, and they testified to some of the dealings in a manner slightly variant from the allegations of their answers.

The foregoing statement summarizes the circumstances from which it is argued the decree should be sustained. These facts are entitled to their proper weight in determining whether the conveyances to Aaron were fraudulent and whether any secret trust for George was reserved. Some of the circumstances proven are recognized as frequent accompaniments of fraud; others seem to us not subject to suspicion. It is not surprising that Aaron Lyon, in his extreme old age, could not give all the details of business transactions occurring quite a number of years before and which he had supposed closed and had dismissed from his mind. It is a matter of common experience that very old people forget the events of recent years long before they lose their hold upon the occurrences of earlier life. The later events make a slighter impression, or the mind is less able to retain them. We do not think it strange that George W. Lyon and Weston Arnold, upon a protracted examination as witnesses, recalled details which they did not remember when their answers were drawn, nor that such examination showed some paragraphs in the answers not completely accurate. We doubt if any attorney can draw a sworn answer upon complicated transactions of years before with such fullness of detail that a close cross-examination of his client will develop no other or different circumstances than those embodied in the answer.

After giving due consideration to every fact and circumstance in proof, the evidence leads our minds to the conclusion that George W. Lyon was heavily indebted to his father; that the evidence discloses with substantial accuracy the items of that indebtedness; that this realty was conveyed by George to Aaron and was received by Aaron in full satisfaction of said debts; that the debts were fully

C. & A. R. R. Co. v. Pearson.

equal to the value of the real estate so conveyed, and that no interest remained in George, and no secret trust of any kind therein was reserved for him. We are impressed with the conviction that as to the lands conveyed to Aaron Lyon, the sworn answers have not been overcome nor any case made for complainant; and as to the lands conveyed to Weston Arnold the correctness of the decree is not brought before us for review.

We have made no special comment upon the fact that Ely was an officer of complainant when it loaned Ely most, at least, of this money; that this was not originally the debt of George W. Lyon, and that he seems to have never been morally bound to pay it; because we think that by giving his note for the debt and suffering judgment to go against him therefor, he is precluded from questioning his liability to the bank, however unwise and even inequitable it may have been that he should become bound therefor. It is by no means clear from the record but what these conveyances were made and recorded before George first became bound for Ely's debt to complainant. If so, the deeds were not fraudulent as to complainant unless a secret trust in favor of George was reserved, and we find no such trust was reserved in the deeds to Aaron. The record certainly shows that the notes in judgment were given by George after these deeds were made, and that complainant's cashier knew of the deeds when he procured George's signature to said notes.

For the reasons stated, the decree is reversed and the cause remanded, with directions to dismiss the bill of complaint.