Syllabus.

## THE DANVILLE BANKING AND TRUST COMPANY

*v.*

## THOMAS S. PARKS, Collector.

1. INJUNCTION—*when order for, is same as the writ.* Where the defendant in a bill is present when an order for a writ of injunction is granted, and has full notice thereof, he is bound to observe it the same as if the writ were issued, or be in contempt; and on dismissal of the bill, thereby removing the restraining order, damages may be properly assessed.

2. REMOVAL OF CAUSE—*to United States court.* The fact that a non-resident complainant, as a stockholder of a banking corporation suing, is not allowed to transfer the cause to the United States court, can only be assigned for error by him, and when he does not unite in the appeal the corporation can not be heard to complain of the refusal to transfer the cause.

3. SAME—*time for making application.* An application by a non-resident party to remove the cause to the United States court, must be made at or before the term at which the cause could be first tried. Where the cause was set for hearing, by agreement, at the February term, and could then have been tried, and the application was made at the August term, after a demurrer was put in to the bill, and the bond filed in September following, the application was properly refused.

4. TAXATION—*property of banking corporations.* The tangible property of a corporation and the shares of stock, are separate and distinct kinds of property under different ownership, and are both liable to taxation under the provisions of the Revenue law.

5. The taxation of the tangible property of a corporation, and the shares of stock thereof, is not double taxation, or unconstitutional. The property, though of different ownership, must be taxed by the municipalities from which such corporations derive their powers and franchises.

6. SAME—*taxing shares of stockholders may be at the place where corporation does business.* Although, at common law, personal property, as a general rule, has no *situs* of its own, but follows the person of the owner, the rule is one of convenience only, and is subject to be changed by statute. Therefore, the Revenue law, for taxing shares of stock in a banking or other corporation at the place where the corporation is located, without regard to the residence of the owners of such shares, is constitutional and valid. This applies to private as well as to National banks.

7. BANKING LAW *of* 1851, *repealed.* The general Banking law of 1851, and the several acts amendatory thereof, at least so far as providing for taxation, have been repealed by subsequent legislation.

APPEAL from the Circuit Court of Vermilion county; the Hon. OLIVER L. DAVIS, Judge, presiding.

Messrs. HENRY & DOVE, and Mr. F. W. PENWELL, for the appellant.

Messrs. EVANS & SWALLOW, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Vermilion circuit court, by the Danville Banking and Trust Company, suing in behalf of themselves and all other stockholders of the bank who might desire to become parties thereto, as complainants, and against Thomas S. Parks, assessor and collector of taxes for Danville township, for the year 1874, defendant, praying a temporary writ of injunction to restrain the collection of certain taxes alleged to be illegal, and for general relief.

A writ of injunction was awarded, but no writ was issued, the defendant being present at the time the order was granted, and agreeing to respect the order without the formality of issuing the writ, which he did do, and, by his attorney, put in a demurrer to the bill, assigning as cause, want of equity in the bill, and for special causes appearing on the face of the bill. The demurrer was sustained and the bill dismissed, whereupon defendant filed a suggestion of damages on account of the injunction order, and the court found, from the evidence submitted, damages to the amount of one hundred dollars, and entered a decree for the same, together with the costs. To reverse this decree complainants appeal, assigning various errors.

The bill of complaint questions the validity of the taxes assessed and levied upon the tangible property and upon the shares of stock of the bank, insisting that the same is double taxation, and is in contravention of article 9 of the constitution of this State; and, second, that the shares of stock are not, under the laws and constitution of this State, liable to be

taxed in the district or township where the bank is situated; and, third, that the bank and the shares of stock are only liable to be taxed in accordance with the provisions of the general law and its amendments, under which the bank was incorporated.

A minor question is made on the refusal to transfer the cause to the United States court, and, also, as to the allowance of damages on disposing of the demurrer.

Upon the last two propositions it is sufficient to say, the finding of the court of the damages was upon evidence submitted to the court. It is true, there was no writ of injunction actually issued, but the order for the writ to issue was regarded by all parties as its equivalent, and it produced the same effect as the writ would have done. Defendant having full notice of the order for the writ, he was bound to observe it, or be in contempt. To consider a bill of complaint like this, ascertain its merits, search out the law applicable to the case made by the bill, and argue a demurrer to it, the proof shows was well worth one hundred dollars, the amount allowed defendant, as he was liable to pay that amount to remove the restraining order.

Upon the other point, that Marple, a non-resident, was not allowed to transfer the cause to the United States court, it is sufficient to say, that he does not appeal from the decree—he neither prayed an appeal nor has he signed an appeal bond. As he does not complain, no one can complain for him. But it does not appear that Marple was a party to the suit when the application was made. He did not, in person, file a petition for that purpose. A paper was filed by the attorney of appellants, purporting to be a petition. If, however, it was so presented and filed by Marple, he did not make and file the petition before, or at the term at which the cause could be first tried, as the act of Congress requires. The cause was set for hearing, by agreement, at the February term, 1875, as the record shows, and could have been tried at that term. The

application was made at the August term, after the demurrer had been put in, and the bond filed in September following.

The important questions remain to be considered. As to the first point made by appellants, this court has repeatedly held, that the tangible property of a corporation and the shares of stock are separate and distinct kinds of property under different ownerships, the first named being the property of the corporation, and the last named is the property of the individual stockholders, both of which, under the provisions of the Revenue law, being subject to taxation. Rev. Stat. 1874, ch. 120. The several sections of that statute bearing on this question, have received the careful consideration of this court in *Porter* v. *Rockford, Rock Island and St. Louis R. R. Co.* 76 Ill. 561, and subsequent cases, and by the Supreme Court of the United States in *Minot* v. *The Philadelphia, Wilmington and Baltimore R. R. Co.* 18 Wall. 206, and *Taylor, Collector,* v. *Secor,* 2 Otto, 575, and other cases. These cases hold that such taxation is neither double nor unconstitutional; that the property of different ownerships must be taxed by the municipalities from which they derive their powers and franchises.

As to the second point, that is settled by this court in the case of the *First National Bank of Mendota* v. *Smith,* 65 Ill. 44, where, in discussing the power of the legislature to fix the *situs* of shares of stock in a bank for purposes of taxation, it was said, while at common law, and as a general rule, personal property has no *situs* of its own, but follows the person of the owner, the rule is one of convenience only, and there is no constitutional prohibition on the legislature to change the rule, and therefore the act of 1867, providing for taxing the shares of National banks at the place where such banks are located, without regard to the residence of the owners of such shares, was constitutional and valid. The provisions of the act herein discussed were quite similar to the provisions of section 35 of the present Revenue law, under which this controversy arises. The doctrine applies as well to private banks as to National banks.

As to the remaining point,—the general law and amendments, under which appellants claim their property should be taxed,—it is sufficient to say, those laws were expressly repealed, as will be seen by section 294 of the "Act for the assessment of property and for the levy and collection of taxes," in force July 1, 1872, in which section is found these clauses: Sections 6 and 7 of "An act to amend an act to establish a general system of banking," passed February 15, 1851, and the acts amendatory thereof, approved February 14, 1859. Session Laws, 1872, p. 70.

They were also repealed under clause 293 of the repealing act of 1874, which, in so many words, repeals the act establishing the banking system of 1851, and all acts amendatory thereof. Rev. Stat. 1874, ch. 831, p. 1023.

After careful examination, we are unable to perceive any error in the record, and affirm the decree.

*Decree affirmed.*