## HENRY BEIDLER

### *v.*

92:32 LRA

## CHARLES S. CRANE *et al.*

*Filed at Ottawa October 31, 1890.*

1. FRAUDULENT CONVEYANCE — *deed absolute in form, but intended only as a security.* A conveyance of property, absolute on its face but really intended only as a mortgage or security, while good between the parties, may be fraudulent as to creditors of the grantor.

2. The fact that an assignment of letters patent was in form absolute when in reality it was only intended as a security, will render the transfer only constructively fraudulent. If, however, the assignee should attempt to justify the assignment as absolute when it is not, this will afford strong evidence of actual fraud.

3. The owner of letters patent made an assignment, unconditional upon its face, but intended merely as a security for moneys advanced and to be advanced. No amount was fixed for the price of the patent. The assignment was duly recorded in the patent office: *Held,* that the natural and necessary effect of the transaction was to mislead, deceive and defraud creditors of the patentee, and that such transfer was in substance and in fact the creation of a secret trust for the benefit of the assignor.

4. An insolvent debtor transferred certain letters patent to another, who had from time to time loaned him money. The assignment was unconditional on its face, but was in reality by way of security for the moneys loaned and for future advances. The assignee transferred the patent to a corporation, controlled by the debtor, in exchange for capital stock. The testimony of the assignor and assignee differed materially, and the assignee denied notice of the assignor's insolvency, and fabricated evidences of indebtedness from the assignor to himself, and by his pleading and testimony set up the claim of absolute ownership to the stock: *Held,* that the facts showed that the assignee was guilty of actual fraud in the transfer.

5. SAME — *secret trust reserved.* Although an assignment of a property right be made upon a valuable and ample consideration, without any intention to defraud any one, yet if there be a secret trust reserved, not disclosed by the writing, the law will treat the transaction as lacking the element of good faith, and conclusively infer fraud. Such a transfer is at least constructively fraudulent as to creditors of the assignor.

6. SAME — *as to consideration paid — whether the grantee or assignee protected.* Where a conveyance or transfer of property is set aside solely

upon the ground that it is constructively fraudulent as to creditors, it will be upheld, in equity, to the extent of the actual consideration, and set aside only as to the excess.

7. SAME—*and herein, of following the fund, in case of further invest-ment.* In the case of a fraudulent transfer of a property right, and the assignee transfers it to a corporation for shares of stock therein, the court, on creditor's bill, will subject the shares of stock to sale for the payment of such creditors; and when the assignee of the patent is a participator in the fraud, he will not be protected even as to the con-sideration actually paid to the assignor. No rights can be acquired under a void conveyance.

8. SAME—*the assignee participating.* A transfer of property must not only be upon a good consideration, but it must also be *bona fide.* Even though the grantee or assignee pays a valuable, adequate and full con-sideration, yet if the grantor or assignor sells for the purpose of defeat-ing the claims of his creditors, and such grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud. The law never allows one man to assist in cheating another.

9. PRACTICE IN CHANCERY—*a single decree in several cases.* Four creditors' bills against the same defendants, involving substantially the same issues, were, by consent, heard together upon the same evi-dence, though the causes were not consolidated, and without objection one decree was entered applying to all the cases: *Held,* that correct practice required a separate decree in each case, but as no injury re-sulted, the irregularity afforded no ground of reversal.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. G. W. STANFORD, for the appellant:

The decree ought to be reversed for the following reasons:

*First*—Because it is a single decree, covering and seeking to adjust the rights of the parties in three distinct and sepa-rate suits.

*Second*—Because the court should, by the decree, have pre-ferred the actual advances made by appellant on account of the patents. The court should have protected Beidler in his actual advances, and for the purpose of ascertaining the amount of such advances the court should have referred the

cases to the master, to take proof on the specific question of how much money, and when, Beidler had advanced to Ellithorpe on account of these patents. *Clements* v. *Moore,* 6 Wall. 312.

*Third*—The patents having been assigned, the court had no power, under the law, to subject them to the payment of the debts of Ellithorpe. They could not be sold on execution while in his hands, and a sale of them by him would give the purchaser the title, free of any claim, in law or equity, against Ellithorpe. *Stevens* v. *Cady,* 14 How. 529; *Stevens* v. *Gladding,* 17 id. 447; *Patterson* v. *Kentucky,* 7 Otto, 506; *Ayer* v. *Murphy,* 15 id. 129.

*Fourth*—The court should not have given the appellee Seelye any relief as against the air brake patent. This patent was granted after the filing of his bill, and before the filing of the supplemental bill.

The purchaser of property must be guilty of fraud. It is not enough that the vendor made the transfer to hinder creditors. The purchaser must also participate. *Miller* v. *Kirby,* 74 Ill. 243; *Hessing* v. *McCloskey,* 37 id. 352.

A court of equity should adjust the rights of the parties upon equitable principles. *Clements* v. *Moore,* 6 Wall. 312.

Mr. H. T. HELM, Mr. LYNN HELM, and Mr. JOHN LYLE KING, for the appellees:

The assignment of the patent being unconditional on its face, when in fact it was only a security, is fraudulent as to creditors of the assignee. *Metropolitan Bank* v. *Godfrey,* 23 Ill. 579; *Hurd* v. *Ascherman,* 117 id. 501; *Lukin* v. *Aird,* 6 Wall. 78; *Moore* v. *Wood,* 100 Ill. 455; *Coolidge* v. *Melvin,* 42 N. H. 510.

If fraudulent in fact, the assignment can not stand over for reimbursement or indemnity. Wait on Fraud. Conveyances, sec. 162; *Boyd* v. *Dunlop,* 1 Johns. Ch. 478.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The appellees, Charles S. Crane, John Lyle King, Henry E. Seelye and Joseph Pfirshing, severally recovered judgments against Albert C. Ellithorpe, for the respective sums of $7932.30, $2033.67, $824.62 and $200, besides costs, and the executions issued upon such judgments were returned "no property found." They thereupon prosecuted in the circuit court of Cook county their several creditors' bills against said Ellithorpe, the appellant, Henry Beidler, the Ellithorpe Safety Air Cushion Company and the Ellithorpe Air Brake Company, for the purpose of subjecting to the payment of their respective judgments certain shares of stock in the two corporations mentioned, that stood in the name of the appellant, Beidler. The causes were heard together, and a single decree was entered. The decree found that the assignments made by Ellithorpe to Beidler of various letters patent which had been issued to him, said Ellithorpe, by the United States Patent Office, for air cushions and for air brakes to be used in the construction and operation of elevators in buildings, and the assignments made by Beidler of certain of said patents to the Ellithorpe Safety Air Cushion Company, and of certain other of said patents to the Ellithorpe Air Brake Company, and each of which said patents was estimated as capital in the particular company to which it was so assigned, and shares of capital stock in said respective corporations issued therefor to said Beidler, as against appellees, who were creditors of said Albert C. Ellithorpe, were fraudulent and void, and subjected the shares of stock into which the patents had been converted, and which were held by Beidler, to the payment of the judgments above mentioned. From the decree thus rendered Beidler appealed to the Appellate Court for the First District, and there was there a judgment of affirmance, and from that judgment he took this second appeal.

The contentions of appellees, as made by their bills of complaint, were, that the various assignments of the letters patent

were made by and through the procurement of Ellithorpe, .with the intent to hinder, delay and defraud them, and prevent them from enforcing the payment of their debts, and with the intent and for the purpose of a secret trust for the benefit of said Ellithorpe, of all of which intents Beidler had knowledge; .and that he, Beidler, intentionally participated and aided in the effectuation of such designs.

The contention of the appellant, Beidler, as shown by his answers and in his own testimony, was, that the sales and assignments made by Ellithorpe to him of the patents were absolute, and for a valuable and sufficient consideration, and that he, in turn, sold and assigned them to the corporations named, and that neither he nor the corporations, nor either of them, held either the patents or the stock for the use or benefit of Ellithorpe, and that the latter had no interest whatever in the stock of either corporation.

Appellant and Ellithorpe were old and intimate friends, and their wives were cousins. The former was a man of large pecuniary means, while the latter was and for many years had been hopelessly and notoriously insolvent, and numerous executions against him had been returned *nulla bona.* Ellithorpe was a man of considerable inventive genius, and had conceived the idea of constructing at the bottom of the elevator shaft an air-tight receptacle, into which the elevator cab would fit, so that as it entered, a cushion of air should be formed and gradually arrest the fall of the cab; and subsequently conceived the further idea of an air brake, by means of which, in case of an accident, the rapid fall of an elevator cab could be arrested prior to the time it should reach the air cushion at the bottom. It appears from the evidence, that, commencing in 1877 and continuing for a number of years thereafter, appellant furnished to Ellithorpe numerous and considerable sums of money, which were used by the latter in providing the means of subsistence for himself and family while he was engaged in developing his inventions, and in the payment of the expenses

incurred in his experiments, and in procuring his patents, and in creating a public demand for his devices. No entries were made of these advances in any books of account, but the evidence shows that on each occasion of a borrowing, or shortly thereafter, a promissory note, due one day after date, was given for the sum furnished. In August, 1879, the air cushion patent was obtained, and in February, 1880, it was assigned to appellant; and the air brake patent was issued October 11, 1881, and assigned to him October 13, 1881. Both of these assignments were for the whole interest in the respective patents, and they were duly recorded in the patent office at Washington.

It is manifest from the proofs, that at the times when the patents were assigned they were not sold to appellant, but were, at most, merely pledged to him as security for the moneys which he had advanced. The fact that the assignments, though absolute in form, were only by way of security for then existing indebtedness and for future advances, is virtually conceded by both Beidler and Ellithorpe in their testimony, and by counsel in their briefs and arguments. It is suggested, however, that by a subsequent arrangement the transfer of the patents became absolute by the surrender to Ellithorpe, on the part of appellant, of $45,000 or more, in notes of the former. There is no satisfactory evidence of such an agreement. There was no purchase price agreed upon for the patents, or either of them, and there was no valuation placed upon them, or either of them, by both or either of the parties. As we have already stated, Ellithorpe was insolvent, and there were numerous judgments against him, and for large amounts, and there is no testimony proving or even tending to show that $45,000 was a fair and reasonable valuation to place upon the patents. Besides this, there are serious conflicts between the testimony of the two parties in regard to the supposed arrangement, not the least of which are, that while one of them states that it was in settlement of all advances to the

date it was made, the other testifies that it did not extinguish all of the indebtedness existing at such date; and that while Ellithorpe testifies that the settlement and surrender of the vouchers was in January, 1882, appellant places such surrender in the spring of 1885, and after the filing of the creditors' bills now under consideration. We can not, under the evidence, hold otherwise than that appellant not only was at the times of the assignments of the patents, but still continues to be, the mere mortgagee or pledgee of such patents, and never was and is not now the absolute owner thereof.

A conveyance of property which is absolute upon its face, but which is really intended as a mortgage or security, is well enough as between the parties; but the settled doctrine is, that such a transfer of property is fraudulent and void as to creditors. Here, the assignments of the patents were absolute in form, and were duly recorded in the patent office, and they imported unconditional sales. Hence their natural and necessary effect was to mislead, deceive and defraud creditors. They were, in substance and in fact, the creation of secret trusts for the benefit of the assignor, and, as such, frauds upon the rights of those to whom he was justly indebted. Even if we should assume that the transfers were for valuable and ample considerations, and were not, as matter of fact, intended to accomplish covinous and dishonest purposes, yet, as there were trusts which were not disclosed by the writings, and were therefore secret trusts, it follows that the law itself regards the transactions as lacking the element of good faith, and conclusively infers fraud, and that the courts are bound so to pronounce. (*Lukin* v. *Aird*, 6 Wall. 78; *Metropolitan Bank* v. *Godfrey*, 23 Ill. 579; *Moore* v. *Wood*, 100 id. 451; *Hurd* v. *Ascherman*, 117 id. 501; *Blennerhassett* v. *Sherman*, 105 U. S. 117.) There is no question, then, but that the assignments were constructively fraudulent.

It is urged that there was error in the decree of the circuit court, in that it did not prefer the claim of appellant to the

amount of the moneys by him actually advanced and paid for, and on account of the several patents in the record named, over and as against the claims and demands of the several appellees. It is without doubt the rule in equity, that where a conveyance or transfer of property is set aside solely upon the ground that it is constructively fraudulent as to creditors, it will yet be upheld to the extent of the actual consideration, and be vacated only as to the excess. (*Phelps et al.* v. *Curts,* 80 Ill. 109 ; *Lobstein* v. *Lehn et al.* 120 id. 549.) The difficulty, however, with this claim of appellant, is, that both the circuit and the Appellate courts have found that the deeds of assignment by which the letters patent were transferred, were fraudulent in fact as well as from mere implication of law, and that we, after a very careful examination of all the evidence found in the record, concur in that view. A transfer of property must not only be upon a good consideration, but it must also be *bona fide.* Even though the grantee or assignee pays a valuable, adequate and full consideration, yet if the grantor or assignor sells for the purpose of defeating the claims of his creditors, and such grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud, for the law never allows one man to assist in cheating another. Bump on Fraudulent Conveyances, (2d ed.) 197 *et seq.* A deed fraudulent in fact is absolutely void as against creditors, and is not permitted to stand for any purpose of reimbursement or indemnity. *Lobstein* v. *Lehn et al. supra; Phelps et al.* v. *Curts et al. supra.*

In the case of *Sands et al.* v. *Codwise et al.* 4 Johns. *536, (at *598, *599,) it was said by Chancellor Kent: "A fraudulent conveyance is no conveyance as against the interest intended to be defrauded. It is impossible that those deeds can be permitted to stand as a security if they are to be adjudged void *ab initio.* I presume there is no instance to be met with of any reimbursement or indemnity afforded by a court of

chancery to a *particeps criminis,* in a case of positive fraud. It is fit and proper that this result should take place, as a contrary course might afford countenance to fraud by giving it a partial effect. It would not become a court of equity to take a single step to save harmless a party detected in a fraudulent combination to cheat. No right can be deduced from an act founded in actual fraud." See, also, Wait on Fraudulent Conveyances, sec. 162.

The statute makes void all conveyances and assignments made with the intent to delay, hinder or defraud creditors of their just and lawful claims, and the instruments of assignment are not purged of the fraud because there was a real and *bona fide* indebtedness, to some amount, due from Ellithorpe to appellant. *Merry* v. *Bostwick et al.* 13 Ill. 398; *Reed* v. *Noxon,* 48 id. 323.

We have already announced our conclusion that the assignments of the letters patent were fraudulent in fact. There are several matters disclosed by the record which impel us to the inference of fraud, and that appellant was a participator in the fraud of his assignor. While the circumstances that the assignments were in form absolute and in reality only securities, would not justify a deduction more prejudicial to appellant than that they were constructively fraudulent, yet when, as in this case, the fraudulent assignee, as against the creditors of the assignor who are seeking to ascertain and enforce their equitable rights, claims, both in his answer and in his testimony, that his ownership of the assigned property is absolute, and that the assignor has no interest whatever therein, it affords strong proof of actual fraud. The evidence satisfactorily shows the fraudulent fabrication of notes for large sums of money, and the manifest purpose of such fabrication was to create a fictitious indebtedness that would defeat the collection of their demands by the creditors of the insolvent debtor. These counterfeit instruments were not only traced to the possession of appellant, but were claimed by him at the hearing

as evidences of real indebtedness. In·consideration of the subsequent assignment by appellant of one of the patents to the Ellithorpe Air Cushion Company, he received 1267 out of the 2000 shares into which the capital stock of that company was divided ; and in consideration of the assignment by him of the other of said patents to the Ellithorpe Air Brake Company, there were issued to him certificates of paid up stock for 975 of the 1000 shares into which the capital stock of this last named corporation was divided. Ellithorpe is the superintendent of one company and the manager of the other, and he and his sons and his son-in-law form a majority of the directory of each.

Without going further into details in respect to these corporations, we may say that we fully concur in that which was said by the Appellate Court in their opinion, that the evidence shows that Ellithorpe controlled the disposition of the patents after they were assigned to appellant, organized the corporations, and had Beidler assign the patents to such corporations, and although the shares of stock stood in Beidler's name, yet Ellithorpe not only controlled their affairs, but enjoyed, substantially, all the benefits of their operations. Appellant testifies, that during the time of the transactions here involved he had no information in respect to Ellithorpe being in debt, or in regard to his solvency or insolvency. In view of the notorious and long continued insolvency of Ellithorpe, and of the relations which existed between the parties, and of the other evidence found in this record, we think that these statements are entitled to no weight whatever. We find many other circumstances corroborative of the view which we have taken of the facts of the case, such as the destruction by appellant of his paid and returned checks on the bank, and of the stubs of his check books, the unreasonableness and inconsistencies of the account which he gives of his transactions with Ellithorpe, and the contradictions between his testimony and that

of Ellithorpe, etc.; but it is useless to multiply words in regard to the matter.

The right acquired by a patentee, on the issue of a valid patent, is properly subject to the claims of creditors, and may be reached by creditor's bill; and when the patentee transfers the patent with intent to defraud his creditors, and a corporation is organized on the basis of the patent, and shares of stock are issued to the assignee of the patent, such shares of stock are subject to the claims of the creditors, as they represent the thing fraudulently transferred. *Gillett et al.* v. *Bate et al.* 86 N. Y. App. 87.

It is urged that the circuit court erred in rendering a single decree, and in not entering separate and distinct decrees in the several causes named in the record. The several creditors' bills presented substantially the same issues, and by consent and agreement of parties they were heard together and upon the same evidence, and, without objection, a single decree was entered. The orders made setting the several causes for hearing together were not, strictly speaking, orders of consolidation. Correct practice would have required the rendition of separate decrees. But it is not perceived that appellant was damnified by the entry of a single decree, and the objection goes to mere matter of form, and not of substance, and affords no sufficient ground for reversal.

Some other objections are urged to the decree, but in our opinion they are without merit, and do not require special notice.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHOPE, dissenting.