## JAMES H. CLARK

### *v.*

## MALCOLM C. HARPER, Exr., *et al.* ·

### *Opinion filed April 17, 1905.*

1. FRAUD—*proof that the grantor was insolvent is competent.* Where a conveyance is attacked as in fraud of creditors it is competent to prove the grantor was insolvent or financially embarrassed.

2. SAME—*deed by insolvent to near relative excites close scrutiny.* A conveyance by an insolvent to a near relative, when attacked as in fraud of creditors, excites closer scrutiny and requires clearer proof of fairness than where conveyance is to a stranger.

3. SAME—*when grantee is regarded as participating in fraud.* A grantee who has notice of the grantor's fraudulent intent to defeat the claims of creditors by making the conveyance is regarded as participating in the fraud, even though he paid some consideration for the conveyance.

4. SAME—*attempt to set up deed, intended as a mortgage, as an absolute conveyance is a fraud.* An attempt by a grantee to defeat claims of the grantor's creditors by setting up as an absolute conveyance a deed absolute in form but in fact intended merely as a mortgage, will ordinarily be regarded as a fraud, and will prevent the grantee from claiming to be a *bona fide* mortgagee.

5. SAME—*what circumstance tends to show bad faith by grantee.* Acceptance of a conveyance with notice that the grantor, in executing the deed, is violating an injunction issued in pending litigation respecting the land conveyed, is a strong circumstance indicating that the grantee did not act in good faith.

6. DEEDS—*return of delivered deed does not re-invest title.* The subsequent destruction or return of a deed which has been delivered to the grantee does not operate to re-invest title in the grantor.

7. SAME—*delivery to agent of grantee is a delivery to grantee.* Delivery of a deed to the agent of the grantee, or of the party who is to have the benefit of the instrument, is a delivery to the grantee, and cannot be said to have been delivered in escrow, to take effect upon a condition not appearing in the deed itself.

8. ESTOPPEL.—*when grantor is estopped to deny delivery.* One who executes a deed to enable the grantee to produce it in court to purge himself of contempt in violating an injunction and delivers it to the grantee's agent for that purpose is estopped, as against parties who have invested money on the faith of the introduction of the deed in evidence, to deny the delivery of the deed to the grantee.

9. EVIDENCE—*effect where part of the testimony is taken before witness is disqualified.* The fact that part of complainant's testimony was taken by the master before complainant was disqualified as a witness by substitution of the personal representative and heirs of the deceased defendant as parties does not authorize the consideration of his testimony.

10. SAME—*prima facie evidence of delivery of a deed, arising from its being recorded, may be rebutted.* The *prima facie* evidence of the delivery of a deed to the grantee, arising from the fact of its having been recorded, may be rebutted by testimony.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

The original bill in this case, filed by the appellant on May 20, 1897, against the widow and children of Peter Wallace, deceased, and Helen A. Butler, and Michael Conrad, sought to reform and correct a deed, executed by Peter Wallace to appellant on November 22, 1893, and recorded on December 8, 1893, as to the description of the property therein conveyed; and to remove a certificate of levy and sheriff's deed to the said Helen A. Butler as clouds upon appellant's title, and to set aside and cancel the proceedings under certain judgments, and to require said Butler and Conrad to deliver up to Clark the possession of the premises in question. Various amendments were filed to the bill from time to time; and the same was answered by said Butler and Conrad, denying the material allegations thereof, and alleging that the deed of November 22, 1893, from Wallace to appellant was fraudulent and void as having been made to hinder and delay creditors, and further alleging that the sheriff's deed to said Butler, and the proceedings leading up to the same, were valid. Subsequently, and on April 30, 1898, Helen A. Butler died testate, devising all her property to appellee, Malcolm C. Harper, as executor and trustee, and leaving her surviving Addie E. Houck, and others, as her only heirs-at-law. Thereupon, on October 12, 1898, appellant filed a supplemental bill, setting up the death of said

Butler, and making said Harper and said heirs-at-law parties defendant; and also stating that on February 21, 1897, said Peter Wallace died intestate, leaving certain persons his heirs-at-law, who were made parties defendant. Answers were filed to the supplemental bill. Thereafter, on November 1, 1900, Harper, as executor and trustee of the estate of Helen A. Butler and devisee under her will, and her heirs-at-law, and Michael Conrad, who was merely a tenant holding the premises under Butler or her heirs, filed a cross-bill making the appellant and the widow and heirs of Peter Wallace parties, and alleging that the deed of November 22, 1893, from Peter Wallace to appellant was fraudulent and void and made to hinder and delay the creditors of Wallace, and particularly Helen A. Butler, in collecting their claims against Wallace. The cross-bill further set forth all the proceedings leading up to the execution of the sheriff's deed to Helen A. Butler, and alleged that the deed of November 22, 1893, from Wallace to Clark was a cloud upon the title of the cross-complainants, and asking that the same be set aside and declared void, and that the deed be delivered up to be canceled, and that cross-complainants be decreed to be the owners of the land in controversy free from the claims of the defendants to the cross-bill. The cross-bill was answered by appellant and the other defendants, denying the material allegations of the cross-bill, and subsequently amendments were filed to the answer of the defendants to the original bill and to the cross-bill, and to the answers of the defendants to the cross-bill.

When the cause was at issue, it was referred to a master in chancery, who took testimony and reported his conclusions to the court. To this report objections were made before the master, and exceptions were filed before the court. The trial court overruled the exceptions to the master's report, and on February 13, 1904, entered a decree finding with the cross-complainants upon the material issues involved, overruling the exceptions to the master's report and

confirming the same, and ordering that the original bill and amended bill of appellant be dismissed for want of equity, and that the deed from Wallace to Clark dated November 22, 1893, and the record thereof, be set aside and held null and void and of no effect as against the cross-complainants, as being a cloud upon their title, and that appellant deliver the same up to be canceled; and further decreeing that the cross-complainants were the owners in fee of the premises in controversy free from any claim of the other parties, and that appellant pay the costs of the suit. The present appeal is prosecuted from the decree so entered.

Some of the material facts in the case as shown by the pleadings and the testimony are as follows:

The property sought to be conveyed by the deed, executed on November 22, 1893, by Peter Wallace to the appellant, was described in that deed as the east half of the west half of the north-west quarter of the south-west quarter of section 11, township 14 north of range 13, east of the third principal meridian, excepting four acres of said premises on the south end, heretofore sold to Harriet and Aldora Tyler, and Elmore Pettyjohn, situate in the county of Cook in the State of Illinois. The property in question was not located in township 14, but in township 41, and the mistake sought to be corrected was the writing in the deed of 14, instead of 41, as the number of the township.

The facts in regard to the title of the appellees as devisees and heirs-at-law of Helen A. Butler are as follows:

On January 24, 1894, a judgment by confession was rendered in the circuit court of Cook county in favor of one John M. Percy against said Peter Wallace and one John T. Long for the sum of $571.75, and execution was issued thereon and levied upon the property in question by the correct description; and under such levy the sheriff sold the property to John M. Percy, the plaintiff in the judgment, on March 13, 1894, for the sum of $400.00.

On April 12, 1894, in the same court a judgment by confession was entered in favor of the said Helen A. Butler and against Peter Wallace for the sum of $854.38 and costs, and execution was issued upon the same; on the 14th day of March, 1895, *alias* execution was issued upon said judgment in favor of said Butler; and on March 15, 1895, the sheriff levied such execution upon the land in question, and on that day, to-wit, March 15, 1895, Helen A. Butler paid to the sheriff the sum of $432.18 for the redemption of said premises from the sale to John M. Percy under his judgment, rendered on January 24, 1894, and a certificate of redemption was issued to said Butler by the sheriff, dated March 15, 1895, and recorded on the same day. On April 23, 1895, the land was sold at sheriff's sale by virtue of the levy and redemption proceedings to Helen A. Butler for $1375.14; and on July 16, 1895, a sheriff's deed was executed by James Pease, sheriff, to Helen A. Butler, and recorded on July 23, 1895, conveying the said premises by the correct description.

In addition to the sheriff's deed, executed to Helen A. Butler in July, 1895, the following proceedings took place:

On February 10, 1892, the Chicago Trust and Savings Bank filed a creditors' bill in the circuit court of Cook county against John T. Long, Peter Wallace, and others, alleging that the property in question was in the possession of Sophia Hoeppner—the former wife of Frederick Hoeppner, who had owned the premises and had obtained a divorce from said Sophia Hoeppner—the latter claiming a homestead estate therein; and also alleging that the premises in question, describing them by the correct description, were really owned by John T. Long, although the title thereto was in Peter Wallace. In the creditors' bill suit, so filed by the Chicago Trust and Savings Bank, an injunction was issued on February 10, 1892, enjoining said Wallace from selling or disposing of the land in question. This injunction was not served on Wallace, but he had notice thereof as early as March 26, 1892, and was served with summons in said creditors' bill

suit on March 7, 1893. In that suit, Peter Wallace filed an answer, setting up his title to the land in question, and claiming to be the owner thereof. Wallace also filed in said creditors' bill suit, begun by the Chicago Trust and Savings Bank, a cross-bill on April 26, 1894, alleging that he was the owner in fee simple of the property in question on February 23, 1892, having obtained title by certain deeds which are set forth, also alleging the issuance of the injunction against him from selling and disposing of the land in question, and that the same was a cloud upon his title; also in said cross-bill alleging that said Sophia Hoeppner was in possession, and furthermore alleging that John T. Long and the Chicago Trust and Savings Bank had no interest in the property, and praying that a decree be entered declaring him to be the owner in fee of the property, and confirming his title to the same.

On March 8, 1895, Helen A. Butler filed an intervening petition in the creditors' bill suit, begun by the Chicago Trust and Savings Bank against John T. Long, Peter Wallace, and others, and therein set up the recovery of her judgment against Wallace for $854.35, the issuance of execution thereon and return of the same on July 11, 1894, the title of Wallace to said land, the suit by the Chicago Trust and Savings Bank, begun by creditors' bill on February 10, 1892, and the proceedings thereunder; and in said intervening petition Helen A. Butler further alleged that Wallace was wholly insolvent, and that she had no security for her debt other than her lien on said land, and that said Wallace had no other property than said land; that there were judgments against him in Cook county amounting to nearly the value of the land; that Sophia Hoeppner was in possession, and praying that said bank and Wallace and Long and Hoeppner be made defendants. On November 12, 1895, Helen A. Butler filed a supplemental petition in said creditors' bill suit, alleging the issuance of execution on the judgment and the levy thereunder, and the redemption on March 15 from the judgment of Percy against Wallace, and the sale under

her judgment, and the sheriff's deed executed to her as above set forth; and in said supplemental petition praying that said bank, and Wallace, and Hoeppner be ruled to answer, and that it be decreed that at the time of filing said bill Wallace was the owner of the real estate in question. On November 12, 1895, a decree was entered in the creditors' bill suit, begun by the Chicago Trust and Savings Bank, in which it was found by the court that, at the time of filing that bill on February 10, 1892, Wallace was the owner of the premises; that the Butler judgment was recovered on April 12, 1894, and the Percy judgment on January 24, 1894; that the premises were redeemed by Helen A. Butler, and certificate of redemption was issued to her; that on April 23, 1895, by virtue of the levy under her execution, the premises were sold to said Butler by the sheriff, and certificate of sale was duly issued to her; that redemption was made on July 16, 1895, and that sheriff's deed was executed to said Butler; and it was thereupon decreed that the bill of the Chicago Trust and Savings Bank should be dismissed and the relief therein prayed denied; that, at the time said bill was filed, Wallace was the owner of the premises in question, and subsequently conveyed four acres thereof to the said Tylers and Pettyjohn, and that, except as to said four acres, Helen A. Butler was then the owner of said premises, and should have immediate possession thereof.

On September 27, 1893, a judgment for $502.00 was recovered against the said Wallace and Long by one A. E. Campbell, and this judgment was subsequently purchased by Butler for $400.00, and assigned to one Hugh McFadden for the use and benefit of Butler's estate.

On or about April 24, 1894, a suit was commenced against Peter Wallace in favor of Frank L. Felch, as assignee of the Sandusky Savings Bank Company, in which judgment was rendered against said Wallace for the sum of $880.90, and execution thereon was issued by the clerk of the Superior Court of Cook county on May 10, 1894. In a

suit begun on May 8, 1894, by the United States Brewing Company against said Peter Wallace and one Albert Mueller upon a bond executed by Mueller and Wallace to secure $714.10, judgment was entered and execution issued by said Superior Court on July 6, 1894, against Mueller and Wallace in favor of said brewing company.

BENJAMIN F. MARCH, and ELA, GROVER & GRAVES, for appellant.

M. C. HARPER, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Substantially, the contest in this case is between the appellees, as judgment creditors of Peter Wallace, deceased, claiming under a sheriff's deed obtained under their judgment against him, and the appellant, as grantee in a deed executed directly to him by the judgment debtor, Wallace. The main contention of the appellees is, that the deed, executed by Peter Wallace to the appellant on November 22, 1893, and recorded on December 8, 1893, was fraudulent and void, as having been made for the purpose of hindering and delaying the creditors of Wallace. The master and the chancellor in the court below found that the deed in question was fraudulent and void as to appellees, and was with the knowledge of the appellant executed with the design of hindering, delaying and defrauding the creditors of Wallace, and particularly Helen A. Butler, whose heirs and devisees are the appellees herein. After a careful examination of the evidence, we are of the opinion that the finding of the trial court in this respect is correct, and should not be disturbed.

*First*—The appellant, John H. Clark, was the son-in-law of Peter Wallace. When the deed of November 22, 1893, was executed by Wallace to appellant, Wallace lived in Chicago and Clark in Quincy. At that time Wallace was

insolvent, or on the verge of insolvency. His creditors were pressing him. The note, held against him by Helen A. Butler, and upon which judgment was afterward rendered on April 12, 1894, was then past due and unpaid. On September 27, 1893, about two months before the execution of the deed from Wallace to the appellant, a judgment was entered against Wallace in favor of one Campbell, and execution was issued against Wallace. The legal title to the land here in controversy was then in Wallace, and the Campbell judgment was a lien upon the property. The testimony shows that the appellant was aware that his father-in-law, Wallace, was pecuniarily embarrassed. It appears from the statement of facts preceding this opinion, that not only were judgments rendered against Wallace in favor of Percy and Butler and Campbell, but also in favor of other parties.

In *Beach* v. *Miller,* 130 Ill. 162, we held that, where the good faith of a sale of property is attacked, it is always competent to prove that the vendor was embarrassed or insolvent. Where a grantor makes a conveyance for the purpose of defeating the claims of his creditors, and the grantee, even though some consideration passed between the grantor and the grantee, knowingly assists in effectuating the fraudulent intent, or even has notice of such fraudulent intent, such grantee will be regarded as a participator in the fraud. "The law never allows one man to assist in cheating another." (*Beidler* v. *Crane,* 135 Ill. 92; *Bear* v. *Bear,* 145 id. 21). While the relationship, which existed between Wallace and the appellant, is not in itself proof of fraud, yet it is a circumstance to excite suspicion; and where a conveyance is made by an insolvent debtor, if a near relationship exists between the grantor and grantee, more vigilant and jealous scrutiny will be excited, and clearer and more convincing proof will be required than when the transaction is between strangers. (*Wightman* v. *Hart,* 37 Ill. 123; *Robinson Bank* v. *Miller,* 153 id. 244; *Martin* v. *Duncan,* 156 id. 274; *Lehman* v. *Greenhut,* 88 Ala. 478).

*Second*—It is claimed on the part of the appellant that an indebtedness existed from his father-in-law, Wallace, to him, and that the deed of November 22, 1893, was executed to him by Wallace in payment of that indebtedness. Appellant, in his original bill filed in this cause, states that, by reason of the existence of such indebtedness and of the conveyance to him, he "is the owner in fee simple of the land and premises aforesaid, and is entitled in equity to have the said deed reformed and corrected," etc. He also alleges in his bill that the deed from the sheriff to Helen A. Butler, and the proceedings under her judgment, are clouds upon his title to the land in question, and that he is "the owner of said land and premises in fee simple and entitled to the possession thereof." If any indebtedness existed from Wallace to the appellant, the proof is uncertain as to the amount and extent of such indebtedness. The consideration named in the deed of November 22, 1893, is $5000.00. The bill, filed by the appellant, alleges that the indebtedness was about $2000.00. In his testimony appellant is unable to name the exact amount of the indebtedness, and admits that he has no books, or letters, or memoranda of any kind to indicate its amount. At one time he says that it was about $800.00, and at another about $1000.00. He introduces some testimony to show that in March, 1893, he advanced about $650.00 to his father-in-law, Wallace. In the deed hereafter mentioned, dated November 7, 1894, in which he conveyed the premises back to Wallace, the consideration named is $754.45. The proof shows that the property in question, at the time it was conveyed to the appellant by Wallace, was worth from $1500.00 to $1800.00. If any such indebtedness actually existed, there is no satisfactory evidence that it was more than about $700.00. When the deed of November 22, 1893, was executed to appellant, who was at that time in Quincy, it was recorded by Wallace, the grantor therein, and, after being recorded, was delivered by the recorder to Wallace, the grantor, and not to appellant, the grantee. It is true

that the recording of the deed was *prima facie* evidence of its delivery to the appellant, but this *prima facie* evidence of delivery, resulting from the recording of a deed, may be rebutted by testimony. (*Valter* v. *Blavka,* 195 Ill. 610). We do not wish to be understood as holding that there was no subsequent delivery of this deed to the appellant, but the circumstances mentioned, together with the readiness with which appellant deeded the property back to his father-in-law, Wallace, when requested to do so by the latter on November 7, 1894, lead to the conclusion, that the deed was not intended to vest the absolute ownership of the property in the appellant.

Under the most favorable view for the appellant, which can be taken of the evidence, the deed so executed was a mere security for an indebtedness, largely less than the value of the property conveyed. This, however, as has already been stated, is not the theory of the bill; but the theory of the bill is that the deed was made, not as a security, but as full payment of indebtedness, so as to clothe the grantee with the absolute ownership. Where a grantee takes a conveyance, absolute on its face, and attempts to set it up as a purchase, when in truth it is a mere security for a debt, such conduct will, under most circumstances, be regarded as a fraud, and will prevent such grantee from claiming to be a *bona fide* mortgagee. (*Metropolitan Bank* v. *Godfrey,* 23 Ill. 531). In *Beidler* v. *Crane,* 135 Ill. 92, we said (p. 98): "A conveyance of property, which is absolute upon its face, but which is really intended as a mortgage or security, is well enough as between the parties; but the settled doctrine is, that such a transfer of property is fraudulent and void as to creditors." Where a deed thus absolute in form is recorded, it imports an unconditional sale, and hence its natural and necessary effect is to mislead, deceive and defraud creditors. By such a deed a secret trust is created for the benefit of the grantor, and as such it is a fraud upon the rights of those, to whom he is justly indebted. Even if the

transfer is for a valuable consideration, yet as there is a trust not disclosed by the writing, and therefore secret, the law regards the transaction as lacking the element of good faith and infers fraud. "A transfer of property must not only be upon a good consideration, but it must also be *bona fide*. Even though the grantee or assignee pays a valuable, adequate and full consideration, yet if the grantor or assignor sells for the purpose of defeating the claims of his creditors, and such grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud. * * * A deed fraudulent in fact is absolutely void as against creditors, and is not permitted to stand for any purpose of reimbursement or indemnity. * * * The statute makes void all conveyances and assignments made with the intent to delay, hinder or defraud creditors of their just and lawful claims, and the instruments of assignment are not purged of the fraud, because there was a real and *bona fide* indebtedness to some amount." (*Beidler* v. *Crane, supra*). The most that can be said in favor of the appellant is, that this transfer was intended as a mere security for a small amount of indebtedness, and as such it cannot be regarded as otherwise than fraudulent as against the creditors of Wallace under the authorities, and in view of the fact that appellant has set it up in his bill as an absolute conveyance.

*Third*—In addition to this, both appellant and Wallace seem to have treated the property as belonging to Wallace, even after the execution of the deed of November 22, 1893. Wallace filed a cross-bill on April 26, 1894, in the creditors' bill suit, brought by the Chicago Trust and Savings Bank against Long and others, and in that bill he makes the following allegation: "that he is the owner in fee simple of the land, without any right, title or claim in favor of the Chicago Trust and Savings Bank, the original complainant, or to the said John T. Long or Mary E. Long, his wife, or the said Sophia Hoeppner, and is entitled to a decree of this court,

confirming his absolute title to the above described land."
This allegation was made by Wallace on April 26, 1894, five
months after he had executed the deed to the appellant. If
it was understood, that the deed of November 22, 1893, con-
veyed the absolute ownership to the appellant, how could
Wallace be the owner in fee simple of the land on April 26,
1894? It is true that the declarations of the grantor in a
deed, made after its execution, will not have the effect of
invalidating it; that is to say, parties making deeds cannot
invalidate them by their own parol declarations made previ-
ously or subsequently. (*Dickie* v. *Carter,* 42 Ill. 388). But,
in the present case, the same declarations made by Wallace,
the grantor, as above indicated, were also, in substance,
made by the appellant, the grantee, through the latter's agent
and attorney, Whitney. On April 6, 1894, about a week
before the Butler judgment was entered, Whitney wrote a
letter to Helen A. Butler, in which he says: "I deem your
claim perfectly good, and I believe now that we will shortly
be able to pay it. The doctor (Wallace) is just now trying
to make a loan on the Evanston land, and I think will be suc-
cessful." The Evanston land, thus referred to, is shown by
the testimony to be the land here in controversy, and if the
deed executed on November 22, 1893, vested the absolute
ownership of the property in the appellant, Clark, it is diffi-
cult to understand why Wallace was trying to make a loan
on the land four or five months thereafter while the legal
title was in appellant.

When the deed was made by Wallace to the appellant on
November 22, 1893, the creditors' bill suit by the Chicago
Trust and Savings Bank was pending, the bill therein hav-
ing been filed on February 10, 1892. An injunction had
been issued therein, enjoining Wallace from selling or dis-
posing of this property. Wallace had knowledge of this in-
junction as early as March 26, 1892, and, when he made the
deed to his son-in-law on November 22, 1893, it was in vio-
lation of the injunction. Where a party has full notice of

the order for a writ of injunction, he is bound to observe it, or be in contempt. (*Danville Banking and Trust Co.* v. *Parks,* 88 Ill. 170). We do not deem it necessary to pass any opinion upon the question, whether or not a deed, which is made in violation of an injunction, passes title. In this case, it is sufficient to say that Clark, the appellant, must have had notice of the existence of the injunction. Certainly, Whitney, who was his agent and attorney and drew the deed of November 22, 1893, had notice of the injunction. The creditors' bill suit, filed by the Chicago Trust and Savings Bank, concerned and had reference to this land, and the nature of Wallace's interest therein. As the suit was pending when the deed was made to appellant on November 22, 1893, it was directly in the line of his title, and under the law he was affected with notice of it, as he purchased the property while it was pending. "A purchaser of real estate is bound to take notice of all recitals in the chain of title, through which his own title is derived." (16 Am. & Eng. Ency. of Law,—1st ed.—p. 798). It is a strong circumstance, indicating the absence of good faith on the part of both Wallace and appellant, that the latter was willing to accept this conveyance under the circumstances already detailed, and with notice or knowledge that the party, executing the deed to him, was doing it in violation of an injunction, issued in litigation concerning the very land itself which he was buying. There is, however, another circumstance connected with this matter which we regard as having great significance.

*Fourth*—One of the solicitors of Wallace in the creditors' bill suit above referred to advised Wallace that he was guilty of contempt of court in making the deed of November 22, 1893, to appellant after having received notice of the injunction. He also advised Wallace that he should obtain a deed from appellant, Clark, conveying the property back to him. Accordingly, at the request of Wallace, and on November 7, 1894, the appellant executed a deed, conveying the property back to Wallace, and sent it by mail either to Wal-

lace, or an agent and attorney of Wallace, named Bingham, in Chicago. There is some conflict in the testimony as to whether the mailed envelope, which contained the deed, was addressed to Wallace himself, or to his agent, Bingham, on its arrival in Chicago. It was received at Bingham's office. On or about the 15th of November, 1894, the parties in the creditors' bill suit were taking testimony before the master, and Wallace, and his agent, Bingham, and the solicitor, who had advised Wallace to obtain the deed from appellant, appeared before the master, and produced this deed of November 7, 1894, in evidence. There is testimony, tending to show that the deed was procured by Wallace, and presented before the master, to save himself from punishment for contempt in having executed it in violation of the injunction. One of the questions in the case is, whether or not the deed in question was actually delivered to Wallace. We are of the opinion that, so far as appellees, creditors of Wallace, are concerned, there was a delivery of the deed. Clark states that he sent the deed to Bingham with instructions to hold the deed in escrow, and deliver it to Wallace upon his payment of an indebtedness of some $700.00, or $800.00, which, as Clark claimed, existed from Wallace to himself, and, in case of the non-payment of such indebtedness, to return the deed to him, Clark. As will be seen hereafter, the testimony of Clark was incompetent, and was held to be incompetent by the master in his report. But even if the testimony of Clark were allowed to stand as a part of the record, the deed was delivered to Bingham, who was the agent of Wallace, and a delivery to Wallace's agent was the same as a delivery to Wallace himself. But, in addition to this, the testimony of the solicitor, who advised the procurement of the deed, and the testimony of the stenographer, who took the evidence before the master in November, 1894, is to the effect that Wallace himself produced the deed before the master, and took it away after the testimony was closed. The solicitor of Wallace, already referred to, says in his tes-

timony: "I called Wallace to task about it, and he admitted that he had made such a deed. I required him to produce that deed at that examination, and he did. * * * I had instructed him to produce it there, which he did, and when produced I offered it in evidence. * * * After the deed was offered in evidence and read into the record, I withdrew the deed, and handed it to Wallace to have it recorded. I discovered it had not been recorded, and I read it into the record, and got the consent of the master and counsel to withdraw it and have it recorded, and handed it to Wallace. * * * Wallace brought the deed over to the hearing. * * * I think Wallace was there all the time until we quit, and then he carried the deed off with him. * * * It was produced for the express purpose of purging him of contempt in the matter of the first conveyance." The stenographer, who took the testimony before the master on November 15, 1894, says: "I was present as such reporter on the occasion when a deed to certain real estate was produced on that hearing by Peter Wallace," and the stenographer then gives a copy of the deed as he took it down at the time. The testimony tends to show that subsequently the deed was returned to the appellant, and destroyed without being recorded. But the subsequent destruction, or surrender, of a deed does not operate to re-invest title in the grantor, nor is a title, vested by the delivery of a deed, divested by the return of it, which has no effect. (*Duncan* v. *Wickliffe,* 4 Scam. 452; *Holmes* v. *Trout,* 7 Pet. 213). It is well settled, that a deed cannot be delivered to the grantee therein to be held in escrow. In case of an actual delivery of a deed by the grantor to the grantee the title will pass, although there is an understanding that it is to take effect only on certain conditions. This is so, because a deed, voluntarily placed in the hands of a grantee, cannot be treated as an escrow. (*Weber* v. *Christen,* 121 Ill. 91; *Fletcher* v. *Shepherd,* 174 id. 262). A delivery of a deed in escrow to an agent of a grantee is a delivery to the grantee himself. (*Price* v. *Pitts-*

*burg, Ft. Wayne and Chicago Railroad Co.* 34 Ill. 13; Devlin on Deeds, sec. 316).

"A delivery to the agent of the grantee, or the party, who is to have the benefit of the instrument, has the same effect as a delivery directly to the grantee, and cannot create an escrow." (6 Am. & Eng. Ency. of Law,—1st ed.—p. 861). In *Baker* v. *Baker,* 159 Ill. 394, we said: "The law is well settled that a deed cannot be delivered to the grantee himself as an escrow. In such a case, to be effectual, the deed must be delivered to a stranger, otherwise the deed becomes absolute at law." (*McCann* v. *Atherton, 106* Ill. 31; *Stevenson* v. *Crapnell,* 114 id. 19). If such a deed is delivered to the grantee to take effect upon a condition, the condition must appear on the face of the deed itself, and not rest in parol. (*Ryan* v. *Cooke,* 172 Ill. 302).

Let it be supposed, however, that Wallace and his agent, Bingham, received the deed of November 7, 1894, executed by appellant and conveying the property back to Wallace, upon certain conditions imposed by appellant, and that they complied with those conditions. In such case, appellant is estopped from denying that there was a delivery of the deed, if Bingham, or Wallace, in whose possession he placed it, used it in such a way as to mislead an innocent party, and induce the latter to act upon the supposition, that the deed was actually delivered to Wallace, the grantee. It appears that Harper, one of the appellees, then the attorney of Helen A. Butler, learned of the execution of the deed of November 7, 1894, and that it was produced before the master at the examination already referred to, and was there read into the record. The proof shows that Harper, acting under the belief that the deed of November 7, 1894, had been delivered to Wallace, the grantee therein, and was a *bona fide* re-transfer of the title to Wallace, proceeded in behalf of his client, Butler, to make a redemption from the sale under the Percy judgment and to obtain a sheriff's deed for his client in the manner set forth in the statement preceding this opinion.

Harper swears that his action in making a redemption for his client was based upon the fact, that the deed of November 7, 1894, had been executed and delivered. Therefore, even if Bingham and Wallace produced the deed in violation of the conditions attached to it by the appellant, appellant is estopped from denying its delivery, because Butler made the redemption mentioned, and invested her money upon the strength of Wallace's title based upon that deed.

In *Tunison* v. *Chamblin,* 88 Ill. 378, where a deed was made by the appellant to his father, it was contended that the deed never became operative because it was never delivered, and it was there held that, when a deed duly executed is found in the hands of the grantee, there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome the presumption; and it was also there held that, where appellant's father, who had received the deed from appellant, had conveyed the property away, and the deed was found in the hands of the grantee from the father with every appearance of being regular and of having been properly executed, there was a delivery of the deed to such grantee, inasmuch as its execution by the appellant to his father enabled the latter to sell the land to a third party, and obtain such third party's money, and thus perpetrate a fraud. So, in the case at bar, even if there was not an unconditional delivery of the deed to Wallace, or his agent, Bingham, the deed was placed in their possession in such a way that they used it, so as to induce action and the investment of money on the part of Butler, and her attorney. At any rate, if the testimony of Clark be true, the case presented is one where one of two innocent parties must suffer a loss, the two parties here being Clark and Butler. It is a maxim of the law that, where one of two innocent persons must suffer a loss, he who is the cause or occasion of that confidence, by which the loss has been caused, ought to bear it. The party, who enables another to commit a fraud, is answerable for the consequences. "If the grantor is injured

by the conduct of his agents, the remedy is against them."
(*Blight* v. *Schenck,* 10 Pa. St. 285; Herman on Estoppel,
sec. 1078). A *bona fide* purchaser from one, who wrong-
fully procures the delivery of a deed placed in escrow, will
be protected. (*Blight* v. *Schenck, supra*). We are of the
opinion that, under the circumstances, Butler and her attor-
ney had a right to rely upon the deed of November 7, 1894,
as having been delivered to Wallace, the grantee therein,
and as having re-vested the title in him.

*Fifth*—The testimony of Clark, however, was not com-
petent, and was properly excluded by the master. He first
appeared before the master, and testified in part on April
21, 1898. On April 30, 1898, Helen A. Butler died. After
her death the change of parties, and the amendments of the
pleadings, necessitated thereby, suspended the further taking
of testimony, and it was not until February 27, 1900, when
appellant again came upon the stand, and gave testimony
before the master, to which the appellee, Harper, objected.
It is insisted upon the part of appellant that his testimony
was competent upon the alleged ground that appellee Harper
was the agent and attorney of Helen A. Butler, and that, as
Harper testified, appellant could also testify. The master
states in his report that he "cannot find that Harper testified
with reference to the same transactions or conversations con-
cerning which said Clark testified." This finding of the
master is sustained by the testimony, which shows that Har-
per never knew appellant until the giving of his testimony in
this case. Harper's testimony related to such knowledge, as
he obtained from examining the records and the evidence,
taken before the master in the creditors' bill suit on Novem-
ber 15, 1894. The fact, that the testimony of the appellant
had been partially taken before the death of Butler, can make
no difference, as the evidence was not heard or considered
until all the evidence was taken, which occurred more than
two years after the death of Butler. In *Smith* v. *Billings,*
177 Ill. 446, Smith had testified by deposition, taken in a

cause in chancery in the lifetime of Billings, and, while Billings was still living, the cause came on to trial before the chancellor, and Billings called Smith upon the stand for further cross-examination, and further cross-examined him. After Smith, who was the complainant, had closed his evidence, and before the evidence for defendant was entered upon, Billings died, and, his executor and heirs being substituted, objected to the consideration of Smith's testimony, which was excluded. This court sustained the ruling of the lower court in excluding the evidence.

For the reasons above stated, the decree of the circuit court is affirmed. As it appears from the record that it was necessary for appellees to file an additional abstract in order to fairly present the evidence appearing in the record to the consideration of the court, the cost of the same will be taxed to the appellant with the other costs.

*Decree affirmed.*

Mr. JUSTICE CARTWRIGHT took no part in the consideration or decision of this case.