## SWERN v. LIGGETT.

## In re LIGGETT.

### No. 260-D.

District Court, E. D. Illinois.

Aug. 11, 1931.

Lewman & Carter, of Danville, Ill., and H. R. Snavely, of Marshall, Ill., for plaintiff.

Fred Rhoads, of Paris, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff, as trustee in bankruptcy of J. R. Liggett, bankrupt, seeks to have set aside a mortgage upon farm land, securing $3,000, executed and delivered to the latter's daughter, defendant, Edna Mae Liggett, four months and fifteen days prior to the bankrupt's adjudication in bankruptcy, upon his voluntary petition, on the ground that said

transfer was made with intent to defraud, delay, or hinder the bankrupt's creditors. Plaintiff also seeks to avoid an asserted transfer of personal property to the same daughter, three days after the recording of the mortgage and claimed to have been paid for by a credit of $920 indorsed upon the mortgage note by the daughter made at that time, on the ground that such alleged sale is invalid under the law of Illinois governing transfers of personal property in general and also because in fraud of the Bulk Sales Law of Illinois.

Liggett was a dairy farmer, owning 120 acres of land and an unassigned dower interest in 40 acres adjoining his own land. He operated the farm and produced and sold dairy products thereon. He lived on the farm with two daughters, twins, who became of age eight and one-half years prior to the execution of the mortgage in question. These daughters continued to reside with their father after they reached maturity and rendered necessary housekeeping services and substantial labor in the fields.

On January 18, 1930, Liggett had prepared and recorded the mortgage in question and then delivered it to his daughter Edna Mae, whereby he mortgaged part of his real estate to secure $3,000. Shortly thereafter he executed a similar mortgage to his other daughter covering the remainder of his real estate; but with this document the court is not concerned except so far as it contributes light upon the fact that, after making the incumbrances mentioned, Liggett remained the owner of an equity in the farm land of no value and of the personal property on the farm.

Three days after delivering the mortgage to his daughter Edna Mae, Liggett claims to have sold to her five cows, four calves, three horses, thirteen hogs, and three sows for a consideration of $920. This, under the evidence, was the fair value of the said personal property. Liggett received no money or property and executed no document of transfer, but his daughter testifies that she thereupon credited him upon his mortgage note with the purchase price. The personal property claimed to have been sold remained on the farm without any sign or indication of change of ownership.

Liggett claims to have retained fifty marketable capons of the alleged value of $90, 400 bushels of corn then worth about 95 cents per bushel or $380, some hay, chickens, and two cream separators. The hay and corn were thereafter consumed by the live stock sold to his daughter, without recompense to Liggett and with his knowledge and approval. The two cream separators, he testified, he sold to his daughter Edna for $100, but whether he received actual credit therefor does not appear. Consequently, when Liggett became a voluntary bankrupt, he owned nothing of value except personal property of the value of $245 which he claimed as exempt.

The bankrupt and his two daughters testified that, when the latter reached the age of 18 years, an agreement was entered into between them and their father that, so long as they remained at home on the farm with him, did the housework, and helped him generally in his work, he would pay them $5 per week; that eight and one-half years had expired; that he paid them no cash; that in 1924 they demanded and received notes from him for what he owed them under said agreement; that new notes were executed in 1929 and renewed at the time of the execution of the mortgages; that he left the calculation of the amount due to them; that included in the indebtedness owed was rental on the 40 acres owned by them in which he had a dower interest, and that during the years in question he paid the family expenses. The circumstances imply that the daughters were to be charged nothing for board and lodging. At the time of the execution of the mortgages, the bankrupt was hopelessly insolvent and that fact was known to the mortgagees.

Though conveyances to near relatives when the conveyor is insolvent are to be closely scrutinized, are presumptively fraudulent, and should be sustained only when there is satisfactory proof of adequacy of consideration (Prosser v. Chapman [C. C. A.] 2 F.(2d) 134; In re Thorsen [D. C.] 282 F. 888; Clark v. Harper, 215 Ill. 24, 74 N. E. 61; Schuberth v. Schillo, 177 Ill. 346, 52 N. E. 319), the facts here sustain the transfer. The girls were of age and were free to earn a livelihood elsewhere. There was nothing improper in their employment by their father, and they proved to be faithful and industrious employees. There is no fact or circumstance impeaching the testimony of the three parties directly interested, other than their intimate relation, their personal interest, and the fact that Liggett told other creditors he owed no debts other than those to commercial houses and the banks. This latter proof indicates concealment and a desire to defeat his other creditors, but it involves in no way the two mortgagees. The

direct testimony must prevail and the mortgages upheld in the absence of evidence showing participation in any fraud by the daughters. Weld v. McKay, 218 F. 807 (C. C. A. 7).

■ Were this transfer within four months of the filing of the petition in bankruptcy, it would, under the evidence of knowledge of insolvency, be void as a preference. But such is not the case. Preferences by failing persons prior to the statutory four months' period are valid. Weld v. McKay, supra. It may be unfortunate that Congress has seen fit to forbid involuntary petitions against farmers, and thus make it impossible for other creditors to attack preferences made valid by the elapse of more than four months prior to the filing of a voluntary petition, but relief from such inequality must come from Congress; it may not emanate from the court.

■ As to the alleged transfer of personal property a different situation exists. In view of the fact that the bankrupt sold all of his personal property to his daughter, outside of the usual course of business, and retained only hay and corn which he later gave to her to feed to the horses, cows, and hogs so transferred, the transaction is void under the Illinois statute forbidding sales in bulk, without notice to creditors (Smith-Hurd Rev. St. 1929, c. 121½, § 78). Main v. Hall, 41 F.(2d) 715 (C. C. A. 7).

■ Furthermore, since the early case of Ketchum v. Watson, 24 Ill. 591, and prior thereto, it has been the law of Illinois that, in order to pass title to personal property as regards third persons, there must be a change of possession, so that others may not be deceived. Here there was no visible change of possession. The chattels claimed to have been transferred remained upon the bankrupt's farm; they were used and cared for by him and his helpers as previously, and to the live stock his grain was fed. To all intents and purposes, the property, so far as the world could ascertain by an examination thereof, was still in the possession of the bankrupt. It follows that the attempted transfer of personal property was in fraud of creditors.

There will be a decree dismissing the bill of complaint as to the real estate mortgage but directing that the alleged transfer of personal property is void, as defrauding, delaying, and hindering other creditors. The defendant shall be directed to pay to trustee the sum of $920, plus $100 for cream separators, with interest from the date of the attempted transfer at the rate of 5 per cent. per annum within thirty days from the date of the decree. In default of such payment, there will be a cancellation of the real estate mortgage, a sale of the land, and payment to the trustee from the proceeds of such sale of the amount of this decree and expenses of administration and of the balance to defendant herein.

The foregoing shall constitute the findings of fact and conclusions of law of the court herein.