(No. 12463.—Appellate Court reversed; circuit court affirmed.)

M. J. BARTEL, Plaintiff in Error, *vs.* MARY R. ZIMMERMAN *et al.* Defendants in Error.

*Opinion filed April 21, 1920—Rehearing denied June 2, 1920.*

1. DEBTOR AND CREDITOR—*proof that deed to member of family is not in fraud of creditors must be clear and satisfactory.* The rule that a debtor may prefer a creditor by a conveyance to him, provided the debt preferred is actual and the property transferred does not greatly exceed the amount of the claim, applies to members of a family; but where an immediate member of a family is preferred as a creditor there must be clear and satisfactory proof of a valid and subsisting debt, which would be enforced regardless of the fortune or misfortune of the debtor.

2. SAME—*relationship of parties may be considered with other evidence as to whether deed is in fraud of creditors.* While a conveyance between parties related to each other by blood or marriage is not, of itself, fraudulent as against the grantor's creditors, yet the fact of relationship may properly be considered in connection with other evidence tending to impeach the transaction.

3. BILLS AND NOTES—*right of surety to subrogation.* A surety on a note is entitled to be subrogated to the rights of the payee where he has paid the judgment on the note and taken an assignment thereof to protect himself against levy upon and sale of his property, and he may enforce the judgment against the maker of the note.

4. PRACTICE—*when bill may be amended after evidence is in.* A creditor's bill brought by a surety on a note to enforce a judgment against the other two parties to the note may be amended after the proofs have been concluded and upon the entry of the final decree, where the amendment is merely to make the bill conform to the proof showing that one of said parties is a co-surety and not a principal.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

JOHN G. FRIEDMEYER, for plaintiff in error.

GRAHAM & GRAHAM, and GEORGE M. MORGAN, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

M. J. Bartel began suit on April 25, 1913, against Joseph Zimmerman and his wife, Mary, in the circuit court of Sangamon county, on a note given by them to Bartel on July 9, 1912, and on a trial by jury obtained judgment thereon on July 22, 1913, for $3180 and costs. Execution was issued on the judgment on May 4, 1914, and was served on both defendants on May 6, 1914. There was an appraisement of the personal property scheduled by three appraisers on May 26, 1914, and after Joseph Zimmerman had made his selection, the remainder of the personal property not exempt was sold by the sheriff on the execution on August 26, 1914, and the execution was returned satisfied in part, with a credit of $704.89 realized on the sale, leaving a balance due on the judgment of $2475.11. An alias execution was issued on October 14, 1914, and demand was made thereon upon the judgment debtors, and the execution was returned not satisfied, no property being found upon which to levy the same. On June 22, 1913, the First National Bank of Springfield commenced suit on a note executed to it for $7650 on April 11, 1912, by Joseph Zimmerman, Mary Zimmerman and M. J. Bartel, the last named being surety thereon for Joseph Zimmerman. The bank obtained judgment against all three of the payors on September 15, 1913, for $8398.43 and costs. Execution issued on this judgment on April 15, 1914, and on April 24, 1914, Joseph Zimmerman scheduled his personal property and claimed his exemption against the judgment. On June 18, 1914, the bank assigned the judgment to Bartel for $8796.15 cash paid by him, the full amount of the judgment, which payment was made by Bartel and such assignment taken to save himself from further costs of a levy and sale of his own property to satisfy the judgment. The execution was then returned not satisfied as to the Zimmermans on July 15, 1914. On October 15, 1914, Bartel had an alias execution issued on the judgment against the Zimmermans.

Joseph Zimmerman at this time was insolvent and was not the owner of any personal property or real estate subject to either of the judgments. Mary Zimmerman, his wife, owned no personal property subject to the judgments but was the owner of a certain lot in Springfield known as lot 57 in Andrew Elliott's subdivision of the northeast quarter of the northeast quarter of section 28, town 16, north, range 5, west of the third principal meridian, and a strip of land adjoining it on the north, upon which was situated her residence and which was occupied by her and her husband as their home. She had obtained this real estate from her mother, Annie Reisch, by a deed dated February 4, 1905, and owned the fee simple title to the premises. On May 16, 1913, Mary Zimmerman and her husband conveyed by warranty deed said premises to Annie Reisch for an expressed consideration of $9000. The deed was recorded May 17, 1913. On October 22, 1914, Bartel filed a creditor's bill in the circuit court of said county against the defendants in error, Mary Zimmerman, Joseph Zimmerman and Annie Reisch, to set aside the warranty deed to Annie Reisch and to subject the property therein named to said judgments, setting up, in substance, the foregoing facts and charging in the bill that the deed was executed on the part of the parties thereto with the fraudulent intent to hinder and delay him and the First National Bank in the collection of the debts due them. The cause was referred to the master in chancery, who took and reported the evidence and recommended that the bill be dismissed for want of equity. The chancellor sustained exceptions to the report and entered a decree in favor of plaintiff in error, in accordance with the prayer of his amended bill. Defendants in error appealed from that decree to the Appellate Court for the Third District. That court reversed the decree of the circuit court and remanded the cause, with directions to dismiss the bill for want of equity. The record has been brought to this court for review by writ of *certiorari.*

The foregoing facts and transactions recited as existing and as having occurred before the filing of the plaintiff in error's bill of complaint, and which are alleged in the bill, are not in dispute by the parties. Annie Reisch and the Zimmermans, the defendants in error, make as their main contention and defense in this case that the conveyance in question was not fraudulent as to the creditors of Mary Zimmerman, including plaintiff in error, and that it was *bona fide* and for a valuable and adequate consideration. Their specific claim is that Mary Zimmerman, as surety for her husband, owed debts on and previous to the date of the conveyance to various parties amounting to $30,400, and that her mother, Annie Reisch, had paid or assumed to pay, at and before the date of the deed, all of said debts and had accepted the conveyance from her daughter as a payment of $9000 on such debts so paid or assumed. Annie Reisch alleges in her answer that she was required to take up and satisfy notes exceeding $10,000 which were the obligations of Mary Zimmerman, and that she took title to the premises for the purpose of partly reimbursing herself for the money paid to and for Mary Zimmerman and gave her credit for $9000 on the indebtedness, and that that was the consideration for the deed. The whole case, therefore, is to be determined upon the question whether or not the proof sustains that claim.

The proof is positive and clear that Joseph and Mary Zimmerman had no property, real or personal, at the time this bill was filed, subject to execution, except the real estate deeded to Annie Reisch, and that at the time Mary Zimmerman deeded that property to her mother it was free and clear of incumbrances and of the value of $9500, and was her homestead. Her husband had been engaged in the piano business and was then indebted perhaps more than $30,000, including the said two judgments. Frank Reisch, brother of Mary Zimmerman and son of Annie Reisch, testified that Mary Zimmerman, as surety for her husband,

owed the following sums on notes: $3000 to Mrs. Anna B. Klor; $1000 to Miss Lena Klor; $13,000 to the Ridgely National Bank; $6000 to George Hofferkamp; $1400 to Mary Platner, his cousin, who lived with his mother, and $6000 to the First National Bank of Springfield, and that his mother had paid or agreed to pay all said sums for her daughter. He testified positively that he did not know when his mother took those obligations upon herself. His testimony shows clearly that he knew very little about any of these debts or what they were given for, and that he did not know what business Joseph Zimmerman was engaged in at or about the time the deed was made but supposed he was engaged in the piano business; that he did not pay much attention to Zimmerman's business and was not interested in it very much. He could not give the date of any obligation his mother assumed for Mary Zimmerman, yet he testified that all her obligations were prior to the date of the deed, "because all the said notes had been running prior to that date." He also testified that he did not know that Mary Zimmerman signed them or what she signed.

Mary Zimmerman testified that her mother paid her $6000 for the deed for the property, and that she could not tell when it was paid and did not know whether it was on the day of the deed or not; that part of the money was paid to her husband and another part was a debt. She did not know where the deed was signed or before whom it was signed or who was present when it was signed. She did not remember that the consideration named in the deed was $9000, and testified that her mother did not give her $9000 for the property. She also testified that when her mother signed the note of Joseph Zimmerman at the First National Bank she took the house, and that is probably what she took the house for. She also stated positively that she did not remember anything about the matter and did not even know how much her mother was entitled to from her,—whether $100,000, or $50,000, or how much; that she is

still living in the property she conveyed to her mother and does not pay her rent, and that there was an agreement that she should have the house as long as she lived and the use of the furniture in the house as long as she lived; that her mother had bought the furniture in the house at the sale under plaintiff in error's execution on his judgment against Joseph and Mary Zimmerman on August 26, 1914. She did testify positively that the fact she was indebted to plaintiff in error in the sum of $3000 and to the First National Bank for $8000 did not prompt her to make a deed to her mother. In justice to this witness it should be further stated that she positively and frankly stated that she was engaged in no business but housekeeping and knew little or nothing about her husband's business, and that she had all the time been advised by her husband, who transacted all her business for her, and that she followed his advice.

Annie Reisch, as appears from the record, is a wealthy woman and owns an interest in a brewery business with George Reisch, her brother-in-law, and others. From her testimony it appears that she transacted no business matters at all, and that her business matters were transacted by her son, Frank Reisch, and by George Reisch. Her testimony shows further that she knows very little, if anything, about the various notes or obligations that she may have signed for her daughter or for Joseph Zimmerman. The consideration named in the deed to her from her daughter to said property is $9000. She testified that she did not know anything about the value of the property or how it happened that such a consideration was named in the deed. She even testified that she did not want the deed made and did not know when it was made and was not present when it was made; and that she did not know anything about the transaction at all. She did remember that about the time the deed was made she signed a note at the First National Bank, but she did not appear to be certain about it, and thought J. A. Easeley attended to the matter. She also testified

that she did not sign the Mary Platner note for $1400 and that her name was not on the note at all; that she did not think she signed the Ridgely Bank note for $13,000 and did not know whether she signed the Klor notes or not; that she did not sign the Hofferkamp note. When asked whether the $2000 that she arranged for the First National Bank to pay Joseph Zimmerman was a part of the consideration for the deed from her daughter to said property she testified that it was an independent transaction altogether. So, according to her testimony, the note that she indorsed at the bank for Mary Zimmerman was the entire consideration for the deed.

The testimony of the other witnesses in the case shows positively and with certainty that the $4000 note of Mary and Joseph Zimmerman payable to the First National Bank of Springfield is the only note or obligation Mary Zimmerman owed that her mother had become liable for previous to the making of the deed on May 16, 1913. Easeley, vice-president of the bank, testified that on May 15, 1913, Mrs. Reisch signed a note there for $2000, and that the money borrowed on that note was credited to an account on the bank books under the name of S. T. Watson, trustee of the Zimmerman Piano Company. There is no testimony anywhere in the record that that transaction ever became an obligation of Mary Zimmerman in any way whatever. Mrs. Reisch testified that this $2000 was turned over to Zimmerman to put into the piano business of the Zimmerman Piano Company, and that it was entirely a separate transaction from the note signed by her the next day, May 16, 1913, when the deed in question was made. Easeley testified that the note Mrs. Reisch testified about was a $4000 note to his bank which was then owed by Joseph and Mary Zimmerman; that Mrs. Reisch guaranteed that note on May 16, 1913, and that she finally took it up on November 10, 1913, by giving her own note in the place of it. The proof is also clear and positive from the testi-

mony of Margaret S. Gillespie, an employee of the Ridgely National Bank, that Mary Zimmerman never at any time signed any of the three notes, being two $5000 notes and one $3000 note. Those notes were originally signed by Hearn & Co., piano dealers in Springfield, and George Reisch, and were indorsed by Joseph Zimmerman. These original notes were taken up on May 9, 1913, by notes signed by Annie Reisch and George Reisch. The two $5000 notes were again renewed by two other notes signed by George Reisch and Annie Reisch on May 9, 1915, payable one year after date, and were still at the bank when this case was tried. From the testimony of George Hofferkamp it appears that Mrs. Reisch never at any time signed the $6000 note given to him by Mary Zimmerman, Joseph Zimmerman and George Reisch, and Mrs. Reisch has never paid or agreed to pay any part of that note or indebtedness. The two Klor notes bear date of January 2, 1915, are payable two years after date, and are signed by George Reisch and Annie Reisch. It appears from the evidence of Mrs. Klor and her daughter, Lena, that Annie Reisch never paid anything on that indebtedness and was not obligated to do so until January 2, 1915. Mary Platner did not testify concerning the indebtedness to her.

From the foregoing it will be seen that the defense of defendants in error in this case is not supported by the evidence in the record, and that the deed in question was evidently made for the purpose of hindering and delaying the plaintiff in error in the collection of the judgments aforesaid. At the time this deed was made plaintiff in error's suit on the note given him by the Zimmermans was pending in the circuit court, and it appears from Mrs. Reisch's testimony that she knew about that suit. It was contested, and, pending the suit, the only property that Joseph Zimmerman or Mary Zimmerman had that could be subjected to the payment of that judgment and the bank's judgment was deeded to her mother, and the only consideration that

293 — 11

Mary Zimmerman received for that conveyance was the assumption of the $4000 note at the First National Bank by her mother, which was an entirely inadequate consideration for property worth $9500. The evidence in the record convinces us that whatever debts of Joseph Zimmerman Mrs. Reisch had assumed or paid for him before the deed in question was made she assumed with the complete understanding that he was hopelessly insolvent, and that she paid or assumed such debts with the full belief that she could never be reimbursed by him, and she did not even exact of him any note or evidence of a claim against him for such assumption or payment, and that it was and is not her intention to ever hold Mary Zimmerman or her property for any of the debts of Joseph Zimmerman. She was well aware of her daughter's financial condition, and the fact that she allowed her daughter the privilege of continuing there rent free and with the free use of the furniture purchased by her at the execution sale is further evidence that the property was not conveyed in good faith by Mary Zimmerman for the purpose of protecting her mother as a creditor but was for the purpose of defeating plaintiff in error in the collection of his indebtedness against her. She did not then offer to pay the bank the other note plaintiff in error had signed with her as surety for her husband and which is sought to be collected in this suit, but allowed the bank to sue for the same later on and paid no attention to notices by that bank that it was past due. The clear intent on the part of Mary Zimmerman was, under the evidence, to hinder and delay plaintiff in error in the collection of his note and also to allow the burden of the other note to the bank to fall on him, and her mother knew these facts when she was made aware of the making of the deed and should have refused to be a means of obstruction in the collection of the debts of her daughter.

It is the established rule of law in this State that a debtor may prefer a creditor or creditors and that such pref-

erence is valid notwithstanding the claims of other cred-
itors, provided the debt preferred is actual and the property
transferred does not greatly exceed the amount of the claim
and that the transaction is not a mere device to secure an
advantage to the debtor or to hinder, delay or defraud other
creditors.   This rule applies to members of a family, but
where an immediate member of a family is preferred as a
creditor there must be clear and satisfactory proof of a
valid and subsisting debt which would be enforced and pay-
ment exacted regardless of the fortune or misfortune of the
debtor.   (*Schuberth* v. *Schillo,* 177 Ill. 346; *Dillman* v. *Na-
delhoffer,* 162 id. 625.)   While a conveyance between par-
ties related to each other by blood or marriage does not,
of itself, establish fraud in the transfer, the fact of rela-
tionship may properly be considered in connection with other
evidence tending to impeach the transaction.   (*Schroeder*
v. *Walsh,* 120 Ill. 403.)   Intent to defraud is sometimes
implied from the relationship of the parties in connection
with other circumstances.   (20 Cyc. 487.)

It cannot be said in this case that the grantee in said
deed had no reasonable grounds to suspect fraudulent in-
tentions on the part of the grantors when the actual con-
sideration paid for property worth $9500 was only $4000.
It is conceded by defendants in error that the payment and
assumption of the debts of Mary Zimmerman subsequent
to the making of the deed could not be considered as any
part of the consideration for that deed.   All those payments
or assumptions of debts by Annie Reisch after the deed
was made were made voluntarily on her part and for the
purpose of relieving her brother-in-law, George Reisch,
from his burden as surety for Joseph Zimmerman, as is evi-
dent from the evidence in the record.   Such payments or
assumptions of debts form no part of the consideration for
the deed, and the positive testimony of Annie Reisch and
Mary Zimmerman shows clearly that no previous payment
or assumption of any debt on the part of Annie Reisch for

Joseph Zimmerman before the deed was made, other than the $4000 debt to the First National Bank, was even thought of as a consideration for that deed.

We think the conclusion of the circuit court that the conveyance should be set aside as fraudulent as against the plaintiff in error was clearly right and that the decree of that court should be affirmed.

The substance of the decree of the circuit court is that plaintiff in error be authorized to levy upon and to sell the premises in question to satisfy his judgment obtained against Mary and Joseph Zimmerman, subject to a first lien of Annie Reisch upon the premises in the sum of $4000,—the amount of the debt assumed by her at the First National Bank,—and subject to a homestead of Mary Zimmerman of the value of $1000. It was further decreed by the court that he is entitled to be subrogated to all the rights of the First National Bank in its judgment against the Zimmermans in consideration of his having paid that judgment to the bank as surety, but that as to Mary Zimmerman, his co-surety for Joseph Zimmerman, he should only be allowed to enforce the judgment as against her for one-half of the amount of the judgment, etc. No cross-errors have been assigned by defendants in error. Under the doctrine of subrogation plaintiff in error was clearly entitled to a decree, as aforesaid, against Mary and Joseph Zimmerman. He paid the bank the amount due on the judgment for the purpose of protecting himself against levy and sale against his property, as he had a right to do, and then took an assignment of the judgment by the bank. The judgment was not satisfied as to Joseph and Mary Zimmerman, and under the doctrine of subrogation the plaintiff in error was clearly entitled to enforce the judgment as aforesaid. *Lochenmeyer v. Fogarty,* 112 Ill. 572; 37 Cyc. 428.

The amendment made by plaintiff in error to his bill after the proofs had been concluded was properly allowed by the court, as it was simply an amendment to make the

bill conform to the proofs and to meet the unexpected showing that Mary Zimmerman was only a co-surety with him on Joseph Zimmerman's note to the First National Bank and not a principal. It was not an abuse of judicial discretion to allow such an amendment at the entry of the final decree. *Booth* v. *Wiley*, 102 Ill. 84.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

> *Judgment of Appellate Court reversed.*
> *Decree of circuit court affirmed.*

---

(No. 13123.—Reversed and remanded.)
THE CITY OF CHICAGO, Appellee, *vs.* LAKE FOREST UNIVERSITY, Appellant.

*Opinion filed April 21, 1920—Rehearing denied June 2, 1920.*