Milford H. Olds, Appellant, v. Adams Clark Building Corporation and William D. Meyering, Appellees.

Gen. No. 37,375.

Opinion filed October 16, 1934.

JOHN F. BELLAIR, for appellant.

TENNEY, HARDING, SHERMAN & ROGERS, for certain appellee; S. ASHLEY GUTHRIE and GEORGE E. HOWELL, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This appeal is prosecuted from a judgment for costs against plaintiff, entered by the county court of Cook county, after a trial without a jury on November 14, 1933, in a proceeding, commenced on October 30, 1933, under ''An Act providing for the trial of the right

of property and claims of exemption in the county court." (Cahill's Stat. 1933, ch. 77, p. 1719.) The finding and judgment, as appears from the record, are in a draft order, wherein the court found the issues for the defendant, Adams Clark Building Corp., and that the right of property is in it and that the "sheriff is hereby directed to proceed with the sale," and adjudged that judgment for costs be entered against plaintiff on the finding.

On the trial plaintiff was a witness in his own behalf. He testified at length both on direct and cross-examination, and called two other witnesses in chief. For defendant, Adams Clark Building Corporation (hereinafter called the Building Corp.), three witnesses testified, among them William S. Deree. In rebuttal plaintiff called four witnesses, among them Ernest A. Jackson, whose testimony both on direct and cross-examination is lengthy. Numerous documents and writings were introduced by the parties. Some of the facts disclosed by the evidence are in substance as follows:

Early in 1932, the Building Corp. brought suit on an appeal bond in the superior court of Cook county against Ernest A. Jackson, Richard S. Morris and a Surety Company, claiming damages in the sum of $4,860, together with interest, as set forth in its affidavit of claim. At that time, and prior thereto, Olds (plaintiff herein) was the confidential attorney for Jackson. In the suit the appearance of Jackson and Morris was entered by a firm of attorneys of which Olds was the head, and subsequently various pleas were filed, supported by an affidavit of defenses. The suit was reached for trial before Judge Stanton on Friday, July 7, 1933. Olds was present in court, as was an attorney for the Building Corp. Olds stated that he "had no defense to the bond." And it appearing that certain necessary court files were missing the

court suggested that formal proof be made on Monday (July 10th). Olds, however, said that he would be out of town on Monday, and requested that the matter be continued until Tuesday, to which the court assented and directed counsel to again appear on Tuesday morning. On that morning, July 11, 1933, counsel were present, the missing files were in court and, on motion of the attorney for the Building Corp., and without objection of Olds, the court ordered that the affidavit of defenses previously filed by Jackson and Morris be stricken for insufficiency, that they be defaulted, that judgment be entered against them in favor of the Building Corp. in the sum of $5,639.60, and that execution issue, etc. An execution on the judgment was placed in the sheriff's hands, and subsequently that official levied on certain goods and chattels, as the property of Jackson, then being in the ''bungalow'' on the two uppermost stories of the ''Banker's Building,'' located on the southwest corner of Adams and Clark streets, Chicago. These goods consist of living room, reception hall, bed room, dining room and kitchen furniture, etc., and are of a character that may properly be considered as ''household goods.''

In the meantime, on Saturday, July 8, 1933 (one day after he had appeared in the superior court and knew that a judgment in a large amount would soon be rendered against Jackson in favor of the Building Corp.), Olds called Jackson to his office, told him about the impending judgment and advised him to execute *two* notes secured by chattel mortgages, one on the goods in the bungalow and the other on other goods owned by Jackson, but located in another downtown building in Chicago. Olds claimed on the trial that at this time Jackson owed him several thousand dollars in fees for attorney's services previously rendered, and for which he then held Jackson's unsecured note. One John T. Whitlock, another client of Olds for many years, hap-

pened to be in Olds' office at the time. Jackson consented to execute the two notes and mortgages. Olds asked Whitlock if he would not, as an "accommodation" to him (Olds), take the proposed notes and mortgages in his name, so that Olds' name *"wouldn't appear on the record,"* as he "didn't care to have a mortgage recorded in his name." Whitlock acceded to the request, and Olds caused the two notes and chattel mortgage to be executed by Jackson. One of the notes is for $4,500 and the other for $425, each dated July 8, 1933, payable two years after date to Whitlock's order, and by him indorsed in blank. The chattel mortgage given as security for the $4,500 note is dated July 8th, acknowledged by Jackson on July 10th and recorded on July 10th. Although Jackson was a married man, his wife, living separate and apart from him at the time, did not join in the mortgage. She was not then in Chicago and her signature could not quickly be obtained. Olds claims that the mortgage was given for the purpose of securing his claim for attorney's fees against Jackson, but it is stated on the face of the mortgage that "Ernest A. Jackson, . . . in consideration of the sum of $4500, *to him paid by John T. Whitlock,* . . . the receipt whereof is hereby acknowledged," does hereby grant, sell, etc., unto said Whitlock the "following goods and chattels": (Here follows a list of goods, situated in the bungalow in said Banker's Building, and which are the same as those afterward levied upon by the sheriff as aforesaid.) It is also stated in the mortgage that the mortgagor (Jackson) "is lawfully possessed of said goods and chattels"; that it shall be lawful for him to retain the possession of the same until default; and that the mortgagee, or his assigns, may take possession of the mortgaged property in the event of feeling insecure, or in the event any writ is levied on said property. On August 15, 1933 (over a month after the mortgage had been executed) Whitlock was again in Olds' office

and at Olds' request he executed and acknowledged a written assignment of the mortgage, wherein, for the consideration of one dollar and other considerations, he sold and assigned to Olds "the within deed of mortgage," and all his right and title to the property therein described, "together with the *original debt* for which said mortgage was given," etc. The assignment was *not* recorded. At the times the mortgage was executed and said assignment made, there was also pending in said superior court against Jackson a separate maintenance suit, brought by his wife several years before, and to which the Building Corp. had been made a party, and in which Olds was and had been acting as Jackson's solicitor. In August, 1929, on Mrs. Jackson's motion, the court had issued an interlocutory injunction restraining Jackson and others, their agents, solicitors, etc., from conveying or incumbering any of Jackson's property. Olds had a copy of the injunction order in his office files, and knew that it was still in force when Jackson at his request executed the two chattel mortgages. Olds testified that when they were executed and recorded he did not think that the injunction thereby was violated, and that, as he understood it, the injunction only enjoined Jackson from the disposing of any interest in any corporation stock, etc. One of his witnesses, the solicitor for Mrs. Jackson in the separate maintenance suit, testified in substance that on occasions, upon Olds' requests, he had consented to a temporary modification of the injunction order, as regards certain particular property, on condition that the modification be made by order of court, and that he had informed Olds in substance that he did not desire to do anything that would stand in Jackson's way in making progress in his business or enterprises. Olds did not consult with Mrs. Jackson's solicitor prior to the making of the two chattel mortgages.

After the sheriff had levied on the goods and chattels in the bungalow, by virtue of the execution issued

on said judgment against Jackson for $5,639.60, but before any sale had been had, a certain notice, signed by Olds, was served on the sheriff on October 30, 1933. It is stated therein that Olds "claims title to all of the goods and chattels enumerated in a list of sheriff's sale, . . . which said sale is set for October 30, 1933, at 10 o'clock a. m., and which list is as follows:" (Here is set forth a list of the goods.) It is also stated in the notice that Olds claims title to the goods by virtue of the chattel mortgage on the goods, given by Jackson to Whitlock and thereafter assigned to Olds; that Jackson's note of $4,500 is still unpaid; that the mortgage is still held by Olds; and that Olds "intends to prosecute his claim in and to said goods and chattels, and forbids the sale of the same by the sheriff." On the same day (October 30, 1933) Olds commenced the present suit in the county court against the Building Corp. and the sheriff. In his statement of claim he "claims right to the following described property (list attached) . . . which property has been levied upon and is in the sheriff's possession by virtue of said levy." In the heading to the list are the words: "List of personal property belonging to Ernest A. Jackson, located in the bungalow of the Banker's Building, on which levy was made." On November 10, 1933, the trial of the present cause was commenced in the county court, without a jury, resulting in the entry of the finding and judgment against Olds and in favor of the Building Corp., as first above mentioned.

In section 4 of the Illinois "Frauds and Perjuries" Act (Cahill's St. 1933, ch. 59, ¶ 4, p. 1492) it is provided:

"Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, . . . made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent,

shall be void as against such creditors, purchasers and other persons."

In section 2 of the "Act to regulate the foreclosure of chattel mortgages on household goods, wearing apparel and mechanics' tools," in force July 1, 1889 (Cahill's St. 1933, ch. 95, ¶ 26, p. 1879) it is provided:

"No chattel mortgage executed by a married man or married woman on household goods shall be valid unless joined in by the husband or wife as the case may be."

One of the contentions here made by Olds, as a ground for the reversal of the judgment appealed from, is in substance that the finding of the trial court, sitting in place of a jury, on the issue of fact as to whether the chattel mortgage in question was executed "with the intent to disturb, delay, hinder or defraud" the Building Corp. (a creditor of the mortgagor, Jackson), is manifestly against the weight of the evidence. After carefully reviewing the evidence and considering numerous adjudicated cases cited in the briefs of opposing counsel, we are unable to agree with the contention. In *Zwick v. Catavenis*, 331 Ill. 240, 247, 248 (italics ours), it is said:

"While a debtor may prefer a creditor or creditors and such preference is valid notwithstanding the claim of other creditors, provided the debt preferred is actual and the property transferred does not clearly exceed the amount of the claim and the transaction is not a mere device to secure an advantage to the debtor to hinder, delay or defraud other creditors, yet such intent to defraud, or to secure by such transfer an advantage to the debtor making it, *may be implied from the relationship of the parties taken in connection with other circumstances proved.* There may be circumstances attending conveyances and transfers to hinder, delay and defraud creditors, which are in law denominated 'badges of fraud,' . . . Badges of fraud are

not conclusive, but are strong or weak, according to their number and concurrence. . . . Whether badges of fraud shown in the evidence are sufficient to establish the fact that the conveyance in question was fraudulent *is a matter for the jury to decide.* Fraud will not be presumed but must be proved. Proof of it may be either direct or circumstantial. Agreements to perpetrate fraud are not made in the open—they are secret arrangements. As a result it frequently occurs that while fraud cannot be shown by direct evidence, yet it may be shown by proof of facts and circumstances from which the jury may rightfully infer the existence of the fraud charged. If a consideration of all the circumstances justifies the conclusion that the transaction was fraudulent, the jury are warranted in finding that fraud exists though there be no direct evidence.'' (Citing *Fabian v. Traeger,* 215 Ill. 220, 222, 223; *Schumacher v. Bell,* 164 Ill. 181, 183, 184.)

It is also the law of this State that in cases similar to the present one, where the conclusion necessarily follows that the particular conveyance was made with the fraudulent intent to delay, hinder or defraud creditors, it can make no difference that with such purpose existing there were combined other motives at the time of making the conveyance. (*Phillips v. Kesterson,* 154 Ill. 572, 574; *Reed v. Noxon,* 48 Ill. 323, 324.) And it is also the law that the testimony of the parties to the transaction that there was no fraudulent intent, and the conveyance was made in good faith, cannot prevail against facts and circumstances satisfactorily showing that such conveyance was fraudulent as to creditors. (*Phillips v. Kesterson, supra; Bell v. Devore,* 96 Ill. 217, 223.) And it is also the law that where the conveyance is made for a consideration but with the fraudulent intent to delay, hinder or defraud creditors, it will not be permitted to stand for the purpose of reimbursement or indemnity. (*Svalina v. Saravana,*

341 Ill. 236, 250; *Beidler v. Crane*, 135 Ill. 92, 100; *Grieb v. Caraker*, 69 Ill. App. 236, 237.)

And we agree with the contention of counsel for the Building Corp. that the following circumstances in substance as disclosed by the evidence constituted "badges of fraud," and which, taken together and with other facts in evidence, justified the finding and judgment entered by the court:

(a) The mortgage in question was executed by the debtor (Jackson) in anticipation of a judgment to be entered against him, after his attorney (Olds) had stated to the superior court that there was "no defense to the bond," and which judgment was actually entered only one day after said mortgage had been acknowledged and recorded. (Citing 27 C. J. p. 488, sec. 139; *Schumacher v. Bell*, 164 Ill. 181, 184, 185.)

(b) The recitals in the mortgage as to the consideration and the debt secured were fictitious and the party named as mortgagee (Whitlock) had no interest in the transaction and was a mere dummy. (Citing 27 C. J. p. 527, sec. 208; 11 C. J. p. 447, sec. 58; *John Deere Plow Co. v. Hershbarger*, 260 Ill. App. 227, 229; *Martin v. Sexton*, 112 Ill. App. 199, 214, 215.)

(c) Olds' testimony showed that the purpose of this subterfuge was to keep his name "off the record" and thereby conceal his connection with the mortgage. A preference given in good faith would not require any such secrecy, and such a transaction is not usually handled in such manner. (Citing *Phillips v. McIlrath*, 237 N. W. [Iowa] 212, 214.)

(d) The opportunity to secure the execution and recordation of the mortgage before the actual entry of the impending judgment against Jackson was obtained by Olds' granted request for a continuance of the pending trial in the superior court. (Citing *Robinson v. Hawley*, 61 N. Y. S. 138, 143.)

(e) Although Olds testified that Jackson's indebtedness to him for claimed attorney's fees was of long

standing, other testimony of his was to the effect that he never had rendered Jackson a bill and had never asked for or obtained any security for the claimed indebtedness until the present mortgage was executed.

(f) When it became apparent that a judgment against Jackson was impending in the superior court Jackson, upon Olds' advice, executed not only the mortgage in question on the household goods in the bungalow but also another mortgage on other chattels, with the evident intent of removing both parcels of property from the lien of the impending judgment.

(g) Both mortgages were executed in violation of the terms of an interlocutory injunction order, previously issued in Mrs. Jackson's suit for separate maintenance, and still in force, restraining Jackson, his agents, solicitors, etc., from incumbering any of his property, of which order Olds had notice.

By virtue of the provisions of the above quoted statute regulating the foreclosure of chattel mortgages on household goods, it is here contended by counsel for the Building Corp. that the finding and judgment of the trial court was right on the further theory that the mortgage in question conveyed household goods and was void because Jackson's wife did not join in the conveyance. We are of the opinion that the contention is a sound one. Olds' contention in the trial court, as he here contends, was that while the goods may be considered of that character, still it sufficiently appears that they were not such because of their having been used by Jackson in his business and for business purposes solely, and, hence, it was not necessary for Jackson's wife to join in the mortgage to render it valid. After reviewing the evidence and numerous authorities cited in the briefs we are of the opinion that Olds' contention is not sustained either by the evidence or the law. It clearly appears that at the time the mortgage was executed, and when the sheriff's levy was made, the particular goods were actually

in use, with Jackson's permission, for *household* purposes, by William S. Deree and his family.

Olds also here contends that the trial court's allowance in evidence, on the offer of the Building Corp. and over the objection of Olds' attorney, of the order and writ of injunction entered in the superior court against Jackson and others in the separate maintenance suit brought against him by his wife, constituted reversible error. We cannot agree with the contention. We think that the admission of the papers in evidence was proper in connection with other properly admitted evidence, as showing an additional fact pertinent to the main question as to the claimed bad faith of the parties to the chattel mortgage when executed. (See *Clark v. Harper,* 215 Ill. 24, 36, 37.) But, even if the admission of the papers could be considered as erroneous, no reversible error was committed, because the cause was tried without a jury and there is much other competent evidence in the present record to sustain the finding and judgment of the court. (See *Grand Pacific Hotel Co. v. Pinkerton,* 217 Ill. 61, 72, 73.) In the case last cited it is said: "We have held that, where a cause is tried before the court without a jury, and there is enough other testimony of unquestioned competency sufficient to sustain the finding of the court, it will not be disturbed, notwithstanding the fact that incompetent evidence has been received, because the same harmful and erroneous effect does not follow as when the admission of such evidence is before a jury."

For the reasons indicated the judgment of the county court of November 14, 1933, appealed from, is affirmed.

*Affirmed.*

SCANLAN and SULLIVAN, JJ., concur.