**BIBO v. BURNETT et al.**
No. 452.

District Court, E. D. Illinois.
May 29, 1936.

T. J. Trogdon, of Paris, Ill., and W. M. Acton, of Danville, Ill., for plaintiff.

V. W. McIntire, of Danville, Ill., and B. H. Redman, of Paris, Ill., for defendants.

LINDLEY, District Judge.

Plaintiff is trustee in bankruptcy of William H. Colwell adjudged bankrupt May 3, 1932, and Adda B. Colwell adjudged March 28, 1932. Acting upon an order of the referee, plaintiff filed this suit to set aside certain alleged fraudulent conveyances and for an accounting. A supplement to the bill attacks a tax deed for the premises, alleged to be defective under the statute and to have been procured by fraud, and prays cancellation of the same. The land involved consists of 324 acres in Edgar county, Ill.

Upon August 21, 1885, one Welcome Burnett died intestate, owning the said real estate, and leaving surviving him his widow, Anna E. Burnett, and his children, James R. Burnett, Nora Burnett, afterwards Nora Levings, and Adda B. Colwell, as his only heirs at law. Thereafter James R. Burnett and his wife conveyed one-third interest in said land to Adda B. Colwell, and on December 16, 1913, Nora Levings and her husband conveyed their one-third interest to William H. Colwell. At all times thereafter William H. Colwell was the owner of one-third of said land and his wife of two-thirds.

Under the law of Illinois, the widow, Anna E. Burnett, upon her husband's death was entitled to assert her right of dower and homestead, that is, the right to have one-third of the rental during her lifetime and a homestead estate of $1,000, provided she continued to occupy the premises. Anna E. Burnett remarried. She moved from the land to Paris, Ill. Thereafter said marriage was dissolved, either by divorce or by death, and Anna E. Burnett resumed her former name. She continued to live in Paris rather than on the farm, and for some years prior to 1920 William H. Colwell, her son-in-law, employed in a bank in Paris, managed the farm for the owners. There was at no time any formal assignment of dower to Anna E. Burnett, but for some years prior to 1920 one-third of the net rentals received from the land were paid to her. At this time she had no estate of homestead, as she was residing in Paris. After 1920 no part of the rentals from the land were paid to her. During 1920 extensive improvements were made, the cost of which was deducted from the rentals received by William H. Colwell as agent and manager.

In 1922 Colwell and his wife moved on the farm. Mrs. Burnett came to live with them. Thereafter she was a member of their household, apparently supported and cared for by them. The owners of the fee made no contribution to her in the way of rental moneys, nor did they make any charge against her for her living expenses. This condition existed until the time of the giving of the mortgage hereinafter mentioned. During this period, Colwell and his wife borrowed $5,000 from Mrs. Burnett and gave her for the same their promissory note. During all of the period in question Colwell managed the farm, made collections, kept book accounts, collected the rents, and made all improvements and distributions. Mrs. Burnett gave the matter no attention. She was elderly and, according to Colwell's testimony, is now 86 years of age and afflicted with angina pectoris. She did not

appear at the trial to testify, nor did she give deposition. I must assume that, had she testified, her testimony would have supported the facts already recited as well as those hereinafter found to exist.

Colwell, in his farming operations, was a borrower of moneys, and became involved. On the 6th day of November, 1930, he made a financial statement to the First National Bank & Trust Company of Paris, Ill., where he owed $21,000, showing indebtedness to another bank of $4,500, real estate mortgages upon land not involved here, $35,066.50, and other indebtedness, $10,000, totalling $70,566.50, assets of $249,852, and a net worth of $179,285.50. He scheduled the land in question as unincumbered. He showed no indebtedness due Mrs. Burnett, except that the $5,000 note aforesaid was included in the indebtedness of $10,000.

At that time the bank asked him for a mortgage upon this land. He said that he would not mortgage it to any one. Shortly thereafter rumors came to him that the banks were about to take judgment against him. He testified that he desired to protect his mother-in-law, Mrs. Burnett, on her $5,000 note; that, after receiving the information mentioned, he returned home and told her that he would like to protect her so that she would have security in case judgments were taken against him. At that time nothing was said about any accrued rental due Mrs. Burnett; neither Colwell nor she mentioned it. Subsequent to 1920, no rentals had been paid to her on account of her dower interest or otherwise, and the books kept by Colwell showed no indebtedness due her. He testified that he did not pay her anything because he was making improvements on the land; that she demurred to such investment and asked him to make payments to her; that he never complied; that she was living with him and his wife; and that he thought there was nothing due her and that no claim would thereafter be made.

For 11 years Mrs. Burnett instituted no suit and made known to the world no claim of anything on account of accruing rentals; nor, when Colwell talked with her concerning security for the $5,000, did she make any mention of any sum due for rentals. The next day, however, Colwell went to Marshall, Ill., where his brother-in-law, James Burnett, was employed in a bank, and repeated to him

that he desired to protect Mrs. Burnett as to the $5,000 as against threatened judgments. Thereupon the brother-in-law suggested that the bank's attorney be consulted. The latter talked with Burnett and Colwell, advising them that, under the law of Illinois, it is legal to prefer one creditor over others, so long as the transaction is in good faith. In the course of this conversation Burnett inquired of Colwell whether he was paying any rent to Mrs. Burnett. Colwell recited the facts above mentioned, and said that he did not consider that he owed any rental or that any claim would be made for rental, in view of the circumstances aforesaid. Colwell was then advised, he says, that improvements cannot be set off as against the amount due one entitled to dower, and thereupon, upon his return to his home, he advised Mrs. Burnett that he would give her a mortgage, not only to secure the $5,000 aforementioned, but also to secure a sum which, reflected by his books, would be equivalent to one-third of the rental from 1920 to 1931. This latter amount he figured at $13,273.66, calculated from the book entries of rental received, plus compound interest upon the same. He gave to Mrs. Burnett then a check for $273.66, and he and his wife executed a note and mortgage for $18,000, representing the note for $5,000, plus the alleged accrued rentals of $13,000, with interest at 6 per cent. per annum, payable semiannually. The mortgage, dated November 18, 1931, was recorded on November 19, 1931.

Mr. and Mrs. Colwell continued to reside on the farm, and shortly more than 4 months later, when the mortgage could no longer be attacked as a preference, they filed their voluntary petitions in bankruptcy. Adjudications followed immediately. Mr. and Mrs. Colwell then remained in possession of the property and still occupy the same. No rent has been paid to the trustee.

Thereafter the bankrupts paid no taxes upon the land, and Mrs. Burnett, the mortgagee, permitted the property to sell at tax sale, purchasing the same in her own name. She received certificates of purchase, and she or Colwell paid the subsequent taxes for 1932 and 1933, except for the second installment of 1933, which was paid by Vera K. Colwell, daughter-in-law of William H. Colwell, who lives in a suburb of Chicago. On June 5,

1934, Mrs. Burnett, for a purported consideration of $838.29, assigned to Vera K. Colwell such certificates of purchase; and thereafter, on December 28, 1934, said Vera K. Colwell received a purported tax deed from the county clerk. Colwell testified that he had no money with which to pay the taxes; that Mrs. Burnett's money was tied up in a building association; and that, instead of advancing the taxes to protect her mortgage, she permitted the property to sell and purchased the certificates so that she might borrow on the same. On January 15, 1935, Vera K. Colwell voluntarily signed an instrument whereby she agreed to pay, in addition to the sum previously paid Mrs. Burnett for the tax certificates, the mortgage of $18,000, with accrued interest and one-third of the net rental, so long as Mrs. Burnett should live.

For the year 1932 Colwell occupied the premises and claims to have paid rent to Mrs. Burnett. In 1933 Vera K. Colwell leased the land from Mrs. Burnett, and paid her rental in the amount of $1,092.64 and again in 1934, $1,502.57. In 1935 Vera K. Colwell, as owner, leased the land, apparently to William H. Colwell. The rental value for that year is presumably $6 per acre. Though the trustee has been entitled to custody and possession of the property ever since his qualification as trustee, subject to such rights, if any, as existed by virtue of the outstanding tax deed, no possession has been surrendered to the trustee; no rentals have been paid the trustee; nor any accounting made to him.

The trustee contends that there was a conspiracy upon the part of the defendants to defraud the creditors of William H. Colwell and his wife; that this was engineered by Colwell, who represented his wife, Mrs. Burnett, and his daughter-in-law, Mrs. Vera K. Colwell, as well as himself; that the inclusion of $13,000, in the mortgage to Mrs. Burnett, representing unpaid rental, was a mere afterthought, after 11 years' delay; that such rental has been waived, is not due, and the attempt to enforce the same fraud of such character as to invalidate the balance of the mortgage indebtedness and any present claim for dower or homestead. It is contended, also, that the tax deed is wholly invalid because it was not issued in compliance with the statutes of Illinois and because, as it is said, the same is likewise a part of the general conspiracy to defeat the creditors of the bankrupts.

■ The principles of law governing such cases are well recognized. A debtor in failing circumstances may pay or secure one or more creditors to the exclusion of others, provided such payment is made or security given with the intent and good faith to discharge or secure a bona fide indebtedness. Nelson & Co. v. Leiter, 190 Ill. 414, 60 N.E. 851, 83 Am. St.Rep. 142. Such preference, where made to an immediate member of the family, must be supported by clear and satisfactory proof of a valid and existing debt, which the parties are shown to have intended would have been enforced and payment exacted, regardless of the fortune or misfortune of the debtor. Monroe County Sav. Bank v. Klohr, 249 Ill.App. 576; Schuberth v. Schillo, 177 Ill. 346, 347, 52 N.E. 319; Dillman v. Nadelhoffer, 162 Ill. 625, 45 N.E. 680; Bartel v. Zimmerman, 293 Ill. 154, 127 N.E. 373. In view of the fact that fraud is seldom, if ever, found in the open, but, rather, lurking in secret places, the court must examine the circumstances of each particular case to determine whether the conveyance is merely a voluntary one, whether the indebtedness alleged is a sham and afterthought, and whether there was an intention that payment of such indebtedness would be exacted, regardless of the fortune or misfortune of the debtor, so that there must be a finding of fraud, though there be no direct evidence thereof. Fabian v. Traeger, 215 Ill. 220, 74 N.E. 131. Even though the parties testify that no fraud was intended, if the facts and circumstances satisfactorily and clearly show the contrary, the latter must prevail. Phillips v. Kesterson, 154 Ill. 572, 39 N.E. 599; Olds v. Adams-Clark Bldg. Corporation, 277 Ill.App. 157. The legality of the alleged indebtedness, the presence or absence of efforts made to collect or to secure the claim or to fix a time for payment, the relation of the parties, the absence or presence of corroborative documentary evidence, are all circumstances of weight. It has been said, even, that verbal promises between closely related parties without corroborative evidence is itself presumptive evidence of fraud. Thus in Prosser v. Chapman (C. C.A.) 2 F.(2d) 134, at page 136, the court said:

"Assuming the verbal promise to the wife to convey the property to her in consideration of her waiver of her contingent right of dower may form the basis of a full consideration for such conveyance, still the promise must have been made with certainty, which is not clear here; and it cannot form the basis for an amount in excess of the fair value of the dower right alleged to have been waived, and not at all if there be a delay in the execution of the verbal promise to make the conveyance as a consideration for the relinquishment of dower, until the husband, who in the meantime has incurred large indebtedness, becomes insolvent. To allow this to be done, and to carry out the private verbal understanding between husband and wife, to convey property in such circumstances would operate as a fraud upon creditors, and obviously so upon those whose debts were contracted pending the period of delay in carrying out the alleged promise."

With these rules in mind, what do we find the circumstances of this case to be? We find the owners of the equity in real estate filing voluntary petitions in bankruptcy shortly after the expiration of the 4-month period allowed by law for recovery of preferences. We find them remaining in possession at all times for the last 4 years without accounting to the trustee or making any payment to the representative of the court from whom they have sought relief in an attempt to discharge their indebtedness. We find that these same debtors paid approximately one-third of the annual rental of the land to the mother so long as she lived in Paris and until about the time that the two bankrupts moved to the land and began to improve the place and received the wife's mother into their home. We find that for the last 11 years, though the debtor Colwell kept careful books of account, he showed no rental accruing or paid to the mother, who was then living in his household and enjoying care and maintenance at their expense. There is no evidence that Mrs. Burnett at any time during these 11 years asked for any rental or had anything other than an intent that her interest in the rents should be fully discharged by her living with her daughter and her husband, except the uncorroborated evidence of Colwell that she asked him for the rent.

Obviously, Colwell is an intensely interested witness. He is bankrupt. The severance between the old estates of himself and his wife and the new occurred at the date of their adjudications. Mrs. Burnett is 86 years old. If she dies intestate, her property will go to her children, one of whom is the bankrupt, Mrs. Colwell. If she should die testate, the entire estate may go to Mrs. Colwell. So Colwell is greatly interested; and he says that, though Mrs. Burnett asked for money, he never gave her any in the way of rental after 1920, and admits that he thought he did not owe her anything, and that, in view of her care and keeping, she would not claim anything. His intent to protect this $5,000 indebtedness was proper under the law of Illinois, and, when he conceived this idea, he had no thought of including rental, nor did Mrs. Burnett. It was only after he had discovered that perhaps even at this late date a stale demand for dower rentals could be made to stand up that it was suggested, not by Mrs. Burnett but by him, that she have security also for this so-called indebtedness.

▮ Whether a trustee in a suit of equity may insist upon the statute of limitation is immaterial, for courts of equity, irrespective of statutes of limitation, may and should consider laches. Here for 11 years Mrs. Burnett acquiesced in the lack of payment of income to her from the farm. She accepted keep and maintenance from the persons, who, if any one, owed her on account for such rental. She permitted Colwell to proceed to manage the farm without interference from her and without accounting to her for any part thereof. He proceeded to become involved to the extent of several thousands of dollars. To the banks and other parties to whom he made his financial statement, he said that this land was unincumbered and would remain so. The language of the Circuit Court of Appeals in the case above mentioned is applicable. It follows that Mrs. Burnett's claim for rental from 1920 up until the adjudication in bankruptcy must fail. A court of equity under the circumstances of this case will not put its stamp of approval upon this late assertion of claim.

▮ A different situation exists as to her right of dower since the adjudication of the bankrupts. Under the Illinois stat-

ute, the right of dower of a surviving spouse is a mere expectancy and rests in action until assigned. Such a person is not entitled to one-third of the rentals as against the owners of the fee or creditors, until the dower has been demanded or set off or assigned to him. On the contrary, where no demand is made or petition filed for the assignment of dower, the heirs at law are entitled to the whole of rentals. The law allows damages only from the time of demand and refusal to assign dower, and thereupon one-third of the rentals of land in which there is dower may form a proper measure for damages. The liability to act and to account arises when a sufficient demand is made. Bedford v. Bedford, 136 Ill. 354, 26 N.E. 662; Heisen v. Heisen, 145 Ill. 658, 34 N.E. 597, 21 L.R.A. 434; Cravens v. Winzenberger, 97 Ill.App. 335. Under the doctrine of these cases, the acquiescence of Mrs. Burnett since 1920 is a complete answer to any claim of demand by her for an accounting for those periods. However, the evidence seems to be clear that, from and after adjudication in bankruptcy at least, Mrs. Burnett made her demands known, and from and after that date, for the years 1932, 1933, 1934, 1935, and 1936 and thereafter, under the authorities mentioned, she is entitled to one-third of the reasonable rentals, as long as she lives.

As to the tax deed, Mrs. Burnett and Colwell were, in order to protect their rights, bound to pay the taxes upon the land. Lewis v. Ward, 99 Ill. 525; McChesney v. White, 140 Ill. 330, 29 N.E. 709; Allison v. White, 285 Ill. 311, 120 N.E. 809. Consequently, they cannot, as against a trustee in bankruptcy, whom they must admit to be the owner of the equity of the land and whose jurisdiction under the terms of the Bankruptcy Act (11 U.S.C.A.) and whose rights thereunder are paramount and made known to the entire world by the adjudications, fail to pay that which should have been paid, to the detriment of the person to whom it should have been paid. Colwell was the occupant of this land when it sold for taxes. He was a tenant at sufferance of the trustee in bankruptcy; he was legally bound to pay rent; but he paid none to the trustee, who was entitled to the same. He made his payment to Mrs. Burnett. She and Colwell could not thus divest the trustee of his title by buying the property at a tax sale.

Furthermore, the tax deed is invalid. The time of redemption mentioned in the notice expired on September 30, 1934. This was Sunday, and, under the laws of Illinois, this fact voids the tax deed. Gage v. Davis, 129 Ill. 236, 21 N.E. 788, 16 Am.St.Rep. 260; Brophy v. Harding, 137 Ill. 621, 27 N.E. 523, 34 N.E. 253. Sales of land for taxes are harsh remedies. Statutes governing same must be strictly construed, and with the requirements of the law there must be strict compliance. The affidavits of service were insufficient in that they failed to aver the manner of service. Brickey v. English, 129 Ill. 646, 22 N.E. 854. Nor does the notice show whether the sale was for taxes or for an assessment. This, too, is fatal. Gage v. Bani, 141 U.S. 344, 12 S.Ct. 22, 35 L.Ed. 776; Bailey v. Smith, 178 Ill. 72, 52 N.E. 948; Harrell v. Enterprise Sav. Bank, 183 Ill. 538, 56 N.E. 63; Gage v. Du Puy, 137 Ill. 652, 24 N.E. 541, 26 N.E. 386; Gage v. Davis, 129 Ill. 236, 21 N.E. 788, 16 Am.St.Rep. 260; Stillwell v. Brammell, 124 Ill. 338, 16 N.E. 226; Gage v. Waterman, 121 Ill. 115, 13 N.E. 543.

Nor can Mrs. Colwell, as assignee of Mrs. Burnett, profit to any greater extent than Mrs. Burnett. She, too, was bound by notice of the trustee's rights. The tax deed is invalid, and she could not as against the trustee divest him of his title by a tax sale, because, under the circumstances of this case, these three parties, all under the tutelage of the bankrupt Colwell, so handled the situation as to deprive the owner of the fee, the trustee, of his title. Such a situation a court of equity will not approve.

However, it does not follow that Mrs. Burnett's mortgage must fail as to the $5,000 note. So far as Mrs. Burnett is concerned, I feel that to permit her demand for rentals from 1920 to 1931 is to effect a constructive fraud upon the creditors. Colwell may have been guilty of intentional fraud, but his personal acts should not unduly punish Mrs. Burnett. I conclude, therefore, that she should be protected in her mortgage to the extent of $5,000, with accrued interest thereon. She comes within the facts of those cases which hold that to the extent of an ac-

954

tual consideration the grantee should be protected. Patrick v. Patrick, 77 Ill. 555; Beidler v. Crane, 135 Ill. 92, 25 N.E. 655, 25 Am.St.Rep. 349; Hayes v. Miniter, 308 Ill. 22, 139 N.E. 74.

I conclude that Mrs. Burnett is not entitled to homestead. This estate she lost long ago. I conclude that she is not entitled to realize upon her mortgage in the sum of $13,000 for alleged rentals, for the reason that by her own laches she is barred from asserting such claim; that to permit the same would be a fraud upon the creditors and their representative, the trustee; that from the time of the demand, the date of the adjudication, she is entitled to dower in the premises so long as she lives; that the mortgage should be canceled as to all sums except $5,000, with interest from such date as the evidence shows the same is unpaid; that as to all other sums it should be canceled; that the tax deed is void for failure to comply with the law and because to permit the assertion of same would be inequitable; that the same should be canceled; that the parties should be protected only to the extent of the money actually paid for taxes; that there should be a decree against the defendants William H. Colwell and Adda Colwell to account and pay to the trustee two-thirds of the reasonable rental of the land during the period that Colwell enjoyed the use of the same after his adjudication, and that, if all of such rentals have been paid to Mrs. Burnett, then the two-thirds of what she has received during such period shall be delivered to the trustee in bankruptcy; that Vera K. Colwell shall account for the reasonable rental of the land while she was tenant of the land at the rate of $5 per acre, and for the year of 1935, when she claimed to be owner, at the rate of $6 per acre; that she be credited with one-third thereof paid to Mrs. Burnett and with such sums as she has expended for taxes, insurance, and improvements, and that she pay the balance to the trustee; that for the year 1936 she may continue as tenant on payment of a rental of $6 per acre, one-third of which shall be paid to Mrs. Burnett and the balance to the trustee in bankruptcy. Mrs. Burnett shall account to the trustee for all rentals received by her in excess of one-third of the total.

The court has not before it the actual figures to frame this accounting, but I believe I have stated what I have in mind so clearly that counsel can prepare a proper decree in accordance with these findings and conclusions.

I adopt the foregoing as my findings of fact and conclusions of law under Equity Rule 70½ of the Supreme Court (28 U.S.C.A. following section 723). Proper form of decree may be submitted.